**[PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT
_____

**No. 04-11245**
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 14, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-01819-CV-T-27-TGW

KIMBERLY SLOMCENSKI,

Plaintiff-Appellant,

versus

CITIBANK, N.A., a foreign corporation,
CITIBANK LONG TERM DISABILITY PLAN,
JOHN DOES, (1 through 6) as plan
administrator for the Citibank Medical
Benefits Plan, Citibank Vision Care
Benefits Plan, Citibank Life Insurance
Benefits Plan, Citibank Dental Care
Benefits Plan, Citibank Accidental
Death & Disability Benefits Plan,
Citibank Pharmaceutical Benefits Plan,

Defendants-Appellees.

_____

**Appeal from the United States District Court
for the Middle District of Florida**
_____

**(December 14, 2005)**

**Before EDMONDSON, Chief Judge, BIRCH and COX, Circuit Judges.**

**BIRCH, Circuit Judge:**

This appeal requires us to address, <u>inter alia</u>, whether a fact-based argument first made by plaintiff-appellant, Kimberly Slomcenski upon a motion for reconsideration of the district court's order granting summary judgment in favor of defendant-appellee Citibank, N.A. ("Citibank") provides a basis for denial of summary judgment in favor of Citibank. The district court – after refusing to void a provision limiting long-term disability ("LTD") benefits for conditions related to mental or nervous disorders, which Slomcenski had challenged pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 <u>et</u> <u>seq.</u> – determined that Citibank's denial of Slomcenski's claim for continued LTD benefits was not arbitrary and capricious. Accordingly, the district court entered summary judgment in favor of Citibank on Slomcenski's ERISA claim. In addition, the district court entered summary judgment in favor of Citibank on Slomcenski's claim brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 <u>et</u> <u>seq.</u> Because we agree with the district court that Slomcenski failed to carry her burden of demonstrating any genuine issue of material fact as to the validity of the limiting provision, we AFFIRM the district

court's grant of summary judgment on Slomcenski's ERISA claim. The district court's disposition of Slomcenski's ADA claim is also AFFIRMED.

## I. BACKGROUND

Slomcenski was hired as an information technology specialist in Citibank's human resources department in November 1997. In this capacity, she was required to develop, implement, and maintain high quality systems, interface with managers about the department's systems needs, and provide training and documentation for system users. This position required an employee with five to ten years of experience and strong analytical, organizational, and communications skills.

As a Citibank employee, Slomcenski was covered by Citibank's Long Term Disability Plan ("Plan"). The Human Resources Policy Committee of Citibank ("Committee") was administrator of the Plan. Pursuant to the Plan, the Committee had the authority to "interpret and construe the provision[s] of the Plan and to finally decide any matters arising under the Plan." R1-33 (Exhibits), Tab A, Exh. 1 at 10. The Plan also specified that the Committee might "at any time, by written notice, amend or terminate th[e] Plan in whole or in part." Id. at 14. In addition, the Plan provided the Committee with the authority to delegate some or all of its responsibilities as it deemed appropriate. Pursuant to this provision, Citibank entered into an Administrative Services Agreement with Continental Casualty

Company ("Continental") which granted Continental sole responsibility for managing the Plan and making final disability claim determinations. The agreement with Continental remained in effect from 1 January 1998 through 31 December 2001. Thereafter, Citibank entered into a similar Administrative Services Agreement with Metropolitan Life Insurance Company ("MetLife"). This agreement, which has been in effect since January 2002, provided that MetLife had all "discretionary authority for approving or denying Plan Benefits in whole or in part." Id. Exh. 3 at 6.

A. Eligibility and Coverage Provisions

The Plan was issued and made effective on 1 October 1993. Employees became eligible to receive benefits under the Plan on the first day of their employment at Citibank. If an employee became disabled, then he or she was eligible to receive short term disability benefits ("STD") for 180 days. If the employee remained disabled after the expiration of the STD period, the receipt of LTD benefits was conditioned on an inability to perform each and every material duty pertaining to his or her regular occupation. After twenty-four consecutive months of disability, inclusive of the initial 180-day STD period, the employee could continue to receive LTD benefits only if unable to perform every occupation for which he or she was or could become qualified.

4

As required by ERISA, Citibank provided its employees with a summary plan description ("SPD"), which explained benefits options to employees in a straightforward manner. The SPD in place at the time of Slomcenski's employment explained that a disabled employee could receive 180 days of STD benefits, followed by eighteen months of LTD benefits if the employee was medically unable to perform the material and substantial duties of the employee's own occupation, followed by continued LTD benefits if the employee was medically unable to perform the essential duties of any occupation for which the employee was or could become reasonably qualified. If the employee was disabled due to a mental or nervous disorder, however, the SPD reflected a limit on disability payments to a total of thirty months from the date the mental or nervous disorder began, unless the employee was confined as an inpatient in a hospital or other treatment center.

It is undisputed that this mental or nervous disorder benefits limitation was not included in the Plan when it was issued in 1993. Because the issue of Committee activity was raised for the first time *after* the summary judgment record had closed, that record contains no direct evidence of Committee activity or lack thereof in connection with the adoption of a mental or nervous disorder limitation or its inclusion in the SPD. The district court found that Citibank first gave its

5

employees notice of the new limitation by way of a summary of material modifications ("SMM") issued in 1997. The amendment was included in the SPD issued in March of 1997, which was subsequently filed with the Department of Labor in compliance with 29 C.F.R. § 2520.104a-3 (1997). All SPD's issued from 1997 on, including the 1998 SPD issued to Slomcenski, contained the mental or nervous disorder limitations provision.

B. Slomcenski's Disability

On 21 July 1999, Slomcenski applied for disability benefits. She claimed that she suffered from headaches, nausea, insomnia, depression, loss of caring, loss of interest, and allergies. According to Slomcenski, these conditions developed following a change of management at her work. Dr. Gilson Webb, a psychiatrist who examined Slomcenski, diagnosed her with major depressive disorder. On the basis of Dr. Webb's diagnoses and Slomcenski's failure to respond to antidepressants and psychotherapy, Continental awarded Slomcenski disability benefits under the Plan.

Following this initial benefits determination, Slomcenski's condition was routinely monitored and re-evaluated. In December 1999, Continental referred Slomcenski to Dr. Daniel Sprehe for an independent psychiatric medical evaluation. Dr. Sprehe confirmed that Slomcenski still suffered from severe

6

depression.  Under a category for physical medical problems, Dr. Sprehe diagnosed Slomcenski with Hashimoto's Thyroid Disease.  In March 2000, Continental arranged for Dr. Charles Paskewicz, a licensed psychologist, to conduct an independent review of Slomcenski's file.  Paskewicz found that all the available evidence indicated that Slomcenski was continuing to suffer from severe depression.  As a result of these diagnoses, Continental informed Slomcenski that she would continue to receive benefits.  However, in the benefits award letter, Continental stated that, if Slomcenski remained disabled, her receipt of benefits would be limited to thirty months because her disability was the result of a mental or nervous disorder.  According to the letter, her benefits would terminate in January 2002.

In October 2000, Dr. Robert Gilbert diagnosed Slomcenski with irritable bowel syndrome.  In January 2001, Dr. Webb re-examined Slomcenski and found that, while Slomcenski continued to suffer from major depressive disorder, "some of [her] symptoms [appeared to be] related to her physical condition."  R1-31 (Exhibits) at SYN00035.  In September 2001, Dr. Paul Winters examined Slomcenski after she complained of fatigue, numbness on part of her foot, and lower back pain.  Dr. Winters noted that Slomcenski was scheduled to be evaluated for fibromyalgia.  During this time, Slomcenski was also evaluated by a

7

rheumatologist, Dr. Michael Burnette, for her complaints of persistent joint pain and chronic fatigue. Dr. Burnette found that Slomcenski had some trigger points for pain in her upper back and some pain with the movement of her spine. Dr. Burnette concluded that Slomcenski "ha[d] manifestations of a fibromyalgia disorder, and [that] her history suggest[ed] chronic fatigue." Id. at SYN00038.

Following Burnette's evaluation, Slomcenski sent a letter to Continental which indicated that she had been diagnosed with fibromyalgia and chronic fatigue syndrome. Slomcenski also reported that she experienced severe pain on a daily basis. In December 2001, Continental responded that Slomcenski's letter and supporting documentation were insufficient to support the finding that Slomcenski suffered from a physical impairment. Accordingly, Continental maintained that Slomcenski's benefits would be terminated in January 2002 pursuant to the thirty-month mental or nervous disorder limitation.

Slomcenski appealed Continental's determination and argued that her depression stemmed from the fibromyalgia, which was a physical condition. By this time, MetLife had assumed responsibility for making benefits determinations under the Plan and referred Slomcenski's file to Dr. Amy Hopkins for an independent review. Based on her review of all the diagnoses in Slomcenski's file, Dr. Hopkins observed that Slomcenski "ha[d] major depression, and all of her

8

[symptoms] can be explained on [that] basis." Id. at SYN0009. She concluded that Slomcenski did not have an "objectively documented physical impairment" and that her disability was related to a mental disorder. Id. at SYN00010. Accordingly, the original determination by Continental that Slomcenski's benefits would terminate in January 2002 was affirmed.

C. Procedural History

Slomcenski filed suit against Citibank and related entities in September 2002. In an amended complaint, Slomcenski alleged that Citibank had violated ERISA and the ADA by denying her claim for continued LTD benefits under the Plan pursuant to the mental or nervous disorder benefits limitation provision. The limitations provision appeared in the copies of the SPD attached to the original and the amended complaints. Neither complaint challenges the validity of the provision. Both in her response to Citibank's motion for summary judgment on the ERISA claim and in her cross-motion for summary judgment, however, Slomcenski argues that the provision was not properly part of the Plan because it appears only in the SPD, not in the original Plan document. Citibank responded with a supplemental affidavit by Phyllis Wade, a Citigroup, Inc. Benefits Manager, stating that the Plan had been properly amended to include the provision through an SMM giving notice to employees, the 1997 revision of the SPD adding the

9

provision, and the filing of that new SPD with the Department of Labor. The court found that Slomcenski, far from showing the invalidity of the provision for the purposes of her own motion for summary judgment, had not raised a genuine issue of material fact as the validity of the provision for the purposes of Citibank's motion. Accordingly, taking the mental or nervous disorder limitation into consideration, the court determined that Citibank's denial of benefits was not arbitrary and capricious and therefore entered summary judgment in favor of Citibank on Slomcenski's ERISA claim.[1] In addition, the district court entered summary judgment in favor of Citibank on Slomcenski's ADA claim because it found that she was unable to perform her job function, and was, therefore, not a "qualified individual" for the purposes of bringing an ADA claim.

Slomcenski filed a motion to reconsider, *for the first time* arguing that the provision was void because none of the documents in which it is included refer to any Committee action in relation thereto.[2] The court observed that neither ERISA

---

[1]This order contains the first mention of the Plan provision requiring Committee action for valid amendment.

[2]The motion also rehashed her arguments about the absence of the provision in the original plan document and challenged the propriety of the court's consideration of the Wade affidavit. The court correctly rejected the first argument on the ground that it had been properly disposed of the first time around and Slomcenski had failed to "'set forth facts or law of a strongly convincing nature to induce' reversal denying her motion for summary judgment." R2-74 at 4. The court also concluded that, because Slomcenski had failed previously to challenge the Wade affidavit, the argument that it ought not to have been considered could not form a basis for reconsideration. Notwithstanding that, the court further observed that because the affidavit did not contradict Wade's prior testimony, it had been properly considered anyway.

nor the Plan's own amendment procedures required reissuance of the original plan document subsequent to an amendment and that the Plan's provision for written notice of any amendment to Plan participants did not require reference to Committee action. Accordingly, the court ruled that in light of Wade's affidavit stating that the provision had been properly added to the Plan, Slomcenski's bare contention that the Committee had not participated in the amendment failed to raise a genuine issue of material fact. The summary judgment order remained undisturbed.

On appeal, Slomcenski argues that the district court erred in entering summary judgment in favor of Citibank on her ERISA claim by finding that the mental or nervous disorder benefits limitation provision could be considered in determining whether the denial of her claim for LTD benefits was arbitrary and capricious.[3] Alternatively, assuming the benefits limitation provision was properly considered, Slomcenski argues that Citibank's denial of her claim for benefits was arbitrary and capricious because Citibank based its denial on the lack of objective

---

[3] Citibank argues that Slomcenski waived her ability to make this argument because she raised it for the first time in her motion for summary judgment in district court. Although the court referred to the argument as "arguably untimely" and an "inappropriate attempt to inject a new theory into the case" without foundation in the complaint, it did address whether the mental or nervous disorder limitation could be properly considered in evaluating the denial of LTD benefits in both its orders regarding summary judgment of the claim. R2-74 at 2; R2-62 at 15-16. Therefore, we may consider Slomcenski's argument that the Committee did not approve the limitation provision. See Local 92, Int'l Ass'n Bridge, Struct. Ornam. Ironwks. v. B&B Steel Erectors, Inc., 850 F.2d 1551, 1555 n.3 (11th Cir. 1988).

evidence of a physical impairment, a "proof requirement" not found in any Plan document.  Appellant's Br. at 16-17.  Slomcenski also challenges the district court's disposition of her ADA claim.

## II.  DISCUSSION

A.  ERISA Claim

We review de novo the district court's grant of summary judgment in a case involving a claim for benefits governed by ERISA.  See Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1134 (11th Cir. 2004).  In making this inquiry, "[w]e view all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party."  Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1277 (11th Cir. 2001).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 n.4 (1986).

"We exercise a complete and independent review of the district court's grant of summary judgment to determine whether there are any genuine issues of material fact which preclude judgment as a matter of law in favor of the moving

party." Sutton v. BellSouth Telecomms., Inc., 189 F.3d 1318, 1319 (11th Cir. 1999) (per curiam). "In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'" Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1344-45 (11th Cir. 2003) (citations omitted). Here, these standards must be applied to evaluate Slomcenski's contention that the Committee did not properly amend the Plan to include the benefits limitation. We find that Slomcenski has not carried this burden.

1. Limitations Provision

ERISA requires that every employee benefits plan "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). In addition, once a company sponsoring a benefits plan has adopted a procedure for amending it, the company must follow that procedure when purporting to amend its benefits plan. See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 85, 115 S. Ct. 1223, 1231 (1995); Shaw v. Conn. Gen. Life Ins. Co., 353 F.3d 1276, 1283 (11th Cir. 2003) ("Having created a particular [amendment] procedure, it seems evident to us that the parties to the agreement must follow that procedure in order to create enforceable amendments to their contract."). For example, where a benefits plan required a participant to

13

make a written request to amend a particular plan provision, we determined that an oral agreement to accomplish the same was insufficient to amend a benefits plan under ERISA. See Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir. 1986). Likewise, where a benefits plan required that both the sponsoring company and the plan administrator sign a written document authorizing amendments to the plan, our court has found that an SPD that was not formally approved by both parties, as specifically required by that plan's amendment provision, was not a valid amendment to the plan. See Shaw, 353 F.3d at 1284.

In addition to the requirement that amendment procedures, once adopted, must be followed for any amendment to be valid, ERISA imposes restraints on the amendment procedures that can be adopted. For instance, we have determined that the ERISA requirement that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), makes informal written notice memorializing an oral amendment, such as a posted notice, memo, letter, or brochure, an impermissible amendment mechanism. Smith v. Nat'l Credit Union Admin. Bd., 36 F.3d 1077, 1080 (11th Cir. 1994). "[A]ny modification or amendment to an ERISA plan can be implemented or applied only after the amendment has been appropriately adopted in a formal, complete and written form." Smith, 36 F.3d at 1081 (emphasis in original); see also Inter-Modal

14

Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 516, 117 S. Ct. 1513, 1516 (1997) (requiring "formal procedures" to amend a benefits plan).

Based on this precedent and the summary judgment record currently before us, we conclude that Slomcenski has failed to raise a genuine issue of material fact as to the validity of the amendment adding the LTD benefits limitation provision. Although Slomcenski contends that Citibank did not follow the Plan's amendment procedures in purporting to adopt the mental or nervous disorder benefits limitation, the only support she offers for this contention is the absence of any mention of Committee action in either the SMM or the SPD.[4] Under the terms of the Plan, only the Committee was vested with the authority to amend the Plan. The Plan's amendment procedure provision required that written notice of any amendment be given to participant employees. The procedure provision did not require, however, that such notice be in any particular form or that it include any specific information. Particularly, it did not require any reference to Committee action. Citibank has not specifically contended that the Committee ever took any action with regard to the inclusion of a mental or nervous disorder benefits

_____

[4]To the extent she reasserts her earlier argument that the provision is invalid because it does not appear in the original Plan document, we agree with and adopt the reasoning of the district court.

15

limitation, but it has offered, in the form of the supplemental Wade affidavit, more general evidence that the amendment was properly made.

Alternatively, assuming the Committee had followed the Plan's amendment procedures, Slomcenski also argues, relying on Smith, that SMMs and SPDs are insufficiently formal plan documents to amend a Plan pursuant to the requirement of 29 U.S.C. § 1102(a)(1) that "[e]very employee benefit plan . . . be established and maintained pursuant to a written instrument."

A distinction between formal "written instruments" and informal documents has been maintained so that plan participants can always effectively decipher their rights and obligations. Smith, 36 F.3d at 1081. Although it does stand for the proposition that informal documents may not effect an amendment, however, Smith deals with notices "posted and/or distributed . . . in the customary manner typically used to disseminate employee communications and information," not with SPDs. Id. at 1080 n.4. Further, the notices at issue in Smith did not "completely or adequately explain the modifications" to the plan and so "did not protect the interests of the employees and their beneficiaries." Smith, 36 F.3d at 1081.

SPDs, on the other hand, as mandatory written instruments, required by ERISA to be "sufficiently accurate and comprehensive to reasonably apprise . . .

16

participants and beneficiaries of their rights and obligations under the plan," are sufficiently formal to meet the requirements of § 1102. See 29 U.S.C. § 1022(a); Alday v. Container Corp. of Amer., 906 F.2d 660, 665-66 (11th Cir. 1990). We find that the SPD at issue here, which was filed with the United States Department of Labor in compliance with ERISA, described and explained the LTD limitations provision completely enough to give employees sufficient notice of their rights under the Plan.

Accordingly, because no genuine issue of fact has been raised as to whether the Committee was involved in drafting and imposition of the limitations provision and the issuance of the SMM and SPDs and because an SPD is sufficiently formal to meet the amendment procedure requirements of the both ERISA and our circuit, we find that the district court's grant of summary judgment based on consideration of that provision should be affirmed.[5]

2. Denial of Benefits

The standard of review applied to a plan administrator's determination of an employee's claim for benefits is based on whether the plan vested the administrator

---

[5]We do not reach the issue of whether the rule in Loskill v. Barnett Banks, Inc. Severance Pay Plan, 289 F.3d 734, 738 (11th Cir. 2002) (per curiam), would apply if Citibank had failed to follow the Plan's amendment procedures, thereby requiring a further showing of either bad faith on the part of Citibank or detrimental reliance on the part of Slomcenski before the amendment would be voided.

17

with discretionary authority to make benefits determinations and whether the administrator had a conflict of interest in making such determinations. See Shaw, 353 F.3d at 1282. A decision governed by a plan that gives such discretion is reviewed under an arbitrary and capricious standard. Id. The district court found, and the parties do not dispute on appeal, that MetLife's denial of benefits to Slomcenski is governed by the arbitrary and capricious standard of review. Accordingly, we review the Plan adminstrator's denial of benefits to Slomcenski for whether it was arbitrary and capricious and agree with the district court that it was not.

Giving more weight to the opinions of some experts than to the opinions of other experts is not an arbitrary or capricious practice. See Black & Decker Disabil. Plan v. Nord, 538 U.S. 822, 831-34, 123 S. Ct. 1965, 1970-72 (2003) (reversing summary judgment in favor of plaintiff awarded solely on the basis that the plan administrator credited its own doctor's evaluation of the claimant's medical records over that of the treating physician). An administrator's determination must be upheld if it has a reasonable factual basis, even if the record also contains contrary information. Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1140 (11th Cir. 1989).

Here, the Plan administrator appears to have made the decision to deny benefits by giving more weight to the opinions of Drs. Webb, Sprehe, and Paskewicz than to that of Dr. Burnette. Drs. Webb, Sprehe, and Paskewicz each diagnosed Slomcenski with major depressive disorder and noted no physical ailments. Even Dr. Burnette, who diagnosed fibromyalgia, recognized that both fibromyalgia and chronic fatigue disorder are related to depression. Accordingly, as the district court concluded, it was not unreasonable for the Plan administrator to conclude, based on this information, that Slomcenski's disability was related to a mental or nervous disorder. Because there was a reasonable basis for the conclusion, it cannot be deemed arbitrary or capricious.

B. ADA Claim

We review de novo a district court's grant of summary judgment on a claim brought under the ADA. See Higdon v. Jackson, 393 F.3d 1211, 1218 (11th Cir. 2004). The ADA protects any "qualified individual with a disability" from discrimination in regard to the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). The term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines

the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Because the ADA reserves its protections for individuals still able to perform the essential functions of a job, albeit perhaps with reasonable accommodation, a plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination thereunder. See Morgan v. Joint Admin. Bd., 268 F.3d 456, 459 (7th Cir. 2001); see also Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 119 S. Ct. 1597, 1603 (1999) (noting that plaintiff's claim that she is "unable to work" forecloses her status as a "qualified individual" for the purposes of the ADA); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1112 (9th Cir. 2000) (affirming grant of summary judgment on ADA claim because plaintiff's claim that she was "totally disabled" precluded her from claiming that she was a "qualified individual" under the ADA).

Based on this precedent, we reject Slomcenski's argument that she could sue Citibank under the ADA for its purported adoption and enforcement of the mental or nervous disorder benefits limitation. A plaintiff may seek redress for discrimination under the ADA if that individual is a "qualified individual with a disability." 42 U.S.C. §§ 12112(a), 12117(a). At the time Citibank employees

20

received notice of the mental or nervous disorder benefits limitation through the 1997 SMM and subsequent SPDs, however, Slomcenski was not yet disabled. In her initial brief, Slomcenski represented that she "began to suffer fibromyalgia symptoms in 1999" and therefore applied for disability benefits in July 1999. Appellant's Br. at 4. Slomcenski asserted that, prior to this onset of symptoms in 1999, she "fully met Citibank's job expectations." Id. She had no prior record of impairment and there is no evidence that anyone at Citibank regarded her as disabled prior to July 1999. Accordingly, there is no evidence in the record that she had a disability as defined by 42 U.S.C. § 12102(2) at the time the mental or nervous disorder limitation was purportedly adopted, and therefore she was not a qualified individual with a disability at that time. Additionally, Slomcenski could not have been considered a qualified individual with a disability when Citibank attempted to enforce the mental or nervous disorder limitation provision against her in January 2002 because her claim for LTD benefits was premised on her representation that she was unable to perform every occupation for which she was qualified or could become qualified. See 42 U.S.C. § 12111(8) (requiring that an ADA plaintiff be able to perform the "essential functions of the employment position that such individual holds or desires"); Cleveland, 526 U.S. at 806, 119 S. Ct. at 1603; Weyer, 198 F.3d at 1108. Because Slomcenski could not demonstrate

21

that she was a qualified individual with a disability as required to bring a claim under the ADA, the district court properly granted summary judgment in favor of Citibank on Slomcenski's ADA claim.[6]

### III. CONCLUSION

In her appeal, Slomcenski has pursued a set of arguments, raised late in the summary judgment proceedings before the district court, that Citibank failed to follow proper procedures for amending its employee benefits plan under ERISA. We conclude that an SPD is a sufficiently formal plan document to have effected an amendment in this case and that Slomcenski has failed to carry her burden as to raising any genuine issue of material fact as to the mental or nervous disorder benefits limitation amendment. Accordingly, the district court properly considered the mental or nervous disorder limitation in its grant of summary judgment; we agree with its finding that the Plan administrator's decision to deny benefits was not arbitrary or capricious; and we **AFFIRM** its grant of summary judgment as to the ERISA claim. Further, because the district court properly concluded that Slomcenski was not a "qualified individual with a disability" under the ADA, the

---

[6] Because we conclude that Slomcenski was not qualified to bring an ADA claim, we decline to reach the merits of her claim that the reasoning in our opinion in Johnson v. Kmart Corporation, 273 F.3d 1035 (11th Cir. 2001), vacated and reh'g granted, 273 F.3d 1070 (11th Cir. 2001), stay granted pending bankruptcy proceedings, 281 F.3d 1368 (11th Cir. 2002), dictates that the inclusion of a mental or nervous disorder limitation like the one at issue here violates the ADA.

district court's grant of summary judgment on Slomcenski's ADA claim is also

**AFFIRMED**.