[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12656

_____

D. C. Docket Nos. 01-00811-CV-VEH-NW & 01-00815 CV-VE

CV-01-VEH-811-NW:

GARY HAMMOND,
MICHAEL WHITTEN,
on behalf of themselves and all others similarly
situated,

Plaintiffs-Appellants,

versus

REYNOLDS METALS CO.,
THE REYNOLDS METALS COMPANY PENSION PLAN FOR
HOURLY EMPLOYEES,
REYNOLDS METALS COMPANY SUPPLEMENTAL UNEMPLOYMENT
BENEFIT PLAN,

Defendants-Appellees,

REYNOLDS METAL COMPANY SUPPLEMENTAL UNEMPLOYMENT
PLAN, et al.,

Defendants.

_____

CV-01-VEH-815-NW:

THOMAS L. DAWSON,
on behalf of himself and all other potential class
members,
JIMMY REED,

                                        Plaintiffs-Appellants,

                             versus

REYNOLDS METALS COMPANY,

                                        Defendant-Appellee.


                   _____

              Appeal from the United States District Court
                 for the Northern District of Alabama
                   _____

                         **(March 7, 2007)**

Before CARNES, PRYOR and FARRIS,[*] Circuit Judges.

PER CURIAM:

      Gary Hammond, Michael Whitten, Thomas Dawson, and Jimmy Reed

appeal the summary judgment against their complaints for breach of fiduciary duty

and benefits owed under the pension plan and supplemental unemployment benefit

_____

      [*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

                                    2

plan maintained by their former employer, Reynolds Metal Company. Reynolds denied the requested benefits because it concluded that the former employees were not eligible under the plain language of the plans. Because we conclude, under de novo review, that the interpretations of the plans by Reynolds were correct and summary judgment was properly granted on the breach of fiduciary duty claim, we affirm.

## I. BACKGROUND

On March 31, 1999, Reynolds sold its three manufacturing plants in Muscle Shoals, Alabama, to Wise Metal Co., Inc., and Wise Alloys, LLC. At each plant, Reynolds maintained a pension plan and a supplemental unemployment benefit plan. As employees of Reynolds, Hammond, Whitten, Dawson, and Reed were covered under both plans.

To benefit its former employees under these plans, Reynolds classified the sales to Wise as plant closures, with the effect that approximately 1300 employees were placed on layoff status. The classification of the sale as a plant shutdown allowed hourly employees to receive up to eight additional quarters of pension service credit. As a result, immediately following the sale, approximately 850 out of 1300 hourly employees were eligible for retirement under the pension plan.

As part of the sales, Reynolds also negotiated with Wise for the employment

of the former employees of Reynolds.  On the day after the sale, the majority of the former employees went to work for Wise.  These employees worked for Wise in the same positions they had with Reynolds but with lower pay and less favorable benefits.  Hammond, Whitten, Dawson, and Reed all accepted employment at Wise.

In 2001, two groups of former Reynolds employees filed separate class-actions against Reynolds, Wise, and the pension plans.  The former employees asserted claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.  The district court consolidated the actions, and the employees filed a revised complaint with Hammond, Whitten, Dawson, and Reed as named plaintiffs.  The revised complaint included claims for benefits under sections 510 and 502 of ERISA and a claim for breach of fiduciary duty.  Reynolds sought and obtained a delay of class certification until after dispositive motions were decided.

Following a period of discovery, the employees voluntarily dismissed their claims against Wise.  Reynolds then moved for, and was granted, partial summary judgment against the employees' claims under section 510.  After further discovery, the parties filed cross motions for summary judgment.  The district court granted the motion of Reynolds in part and dismissed the claims for breach

of fiduciary duty. The district court denied the rest of the motion because it determined, under de novo review of the interpretations of the pension plan by Reynolds, that material issues of fact existed. Reynolds filed a motion to alter or amend the judgment based on our decision in Slomcenski v. Citibank, 432 F.3d 1271 (11th Cir. 2005). The district court granted the motion, decided that arbitrary and capricious review applied, and granted summary judgment for Reynolds.

## II. STANDARD OF REVIEW

"We review de novo the district court's grant of summary judgment in a case involving a claim for benefits governed by ERISA." Slomcenski, 432 F.3d at 1277. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We may affirm the district court on any ground that appears in the record. Jaffke v. Dunham, 352 U.S. 280, 281, 77 S. Ct. 307, 308 (1957).

## III. DISCUSSION

To resolve this appeal we must address two matters: first, whether the district court correctly granted summary judgment regarding the denial of benefits by Reynolds under the pension plans, and second, whether the district court correctly granted summary judgment on the employees' claim for breach of fiduciary duty. We address each issue in turn.

*A. The Denial of Benefits by Reynolds Was Correct.*

We have used six-steps to review, under ERISA, a denial of benefits. Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137 (11th Cir. 2004). Only the first step is necessary to resolve this appeal. With that step, the court applies "the de novo standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision." Id.

The employees challenge the interpretations by Reynolds of five sections of the pension plan and supplemental unemployment benefit plan. First, the employees challenge the interpretation of section VI, paragraph (5), of the pension plan, which provides that an employee may receive a maximum of eight additional quarters of service after layoff. Second, the employees challenge the interpretation of section III, paragraph (8), of the pension plan, which is entitled the "Rule of 65 Retirement Eligibility." Third, the employees challenge the interpretation of section III, paragraphs (6) and (7), which govern early pensions. Fourth, the employees challenge the interpretation of supplemental unemployment benefits in the supplemental unemployment benefit plan. Fifth, the employees challenge the interpretation of the provision for short-week benefits in the supplemental

6

unemployment benefit plan. Each of the employees' arguments fails under a <u>de novo</u> standard of review.

1. Section VI, paragraph (5)

Section VI, paragraph (5), provides as follows that an employee may receive a maximum of eight additional quarters of service after layoff:

> In addition to the number of calendar quarters determined as above provided, the Employee's service under this Section VI shall also include any calendar quarter (not otherwise included) between such last hiring date and the date of retirement in which the Employee: (a) was continuously absent from work due to layoff, sickness or accident . . . but in no event will the Employee receive credit on account of such continuous absence for more than a maximum of eight (8) consecutive calendar quarters beginning [when] the Employee's absence from work commences excluding any calendar quarter during such eight (8) consecutive calendar quarters otherwise credited to the Employee.

Pension Plan § VI (5).

The plant shutdowns occurred on March 31, 1999, during the first quarter of 1999. Because most employees were paid in April a week after they finished their work for Reynolds, those employees also received pension credit for the second quarter of 1999. <u>See</u> Pension Plan § VI (1). According to section VI, paragraph (5), Reynolds credited each employee with additional calendar quarters of service for a maximum of eight consecutive quarters after the first quarter of 1999, which was the last quarter during which any employee worked for Reynolds. The

7

employees who received credit for the second quarter of 1999, because of receipt of wages in that quarter, received an additional seven quarters.

The employees argue that they are entitled to one additional quarter of service under section VI. The employees argue that they should have received credit for eight quarters following the second quarter of 1999. The problem with the employees' argument is that it is contrary to the plain language of the pension plan.

The pension plan provides that an employee may receive "a <u>maximum</u> of eight (8) consecutive calendar quarters beginning [when] the Employee's absence from work commences," but the plan excludes "any calendar quarter during such eight (8) consecutive calendar quarters otherwise credited to the Employee." The language "during such eight (8) consecutive calendar quarters" limits the credit an employee can receive. When his absence from work commenced on March 31, 1999, an employee could have received a maximum of eight consecutive quarters from then until the first quarter of 2001. Because the second quarter of 1999 had already been credited to the employee, under another provision of the pension plan, that quarter was excluded from the maximum of eight consecutive quarters the employee could have received under section VI. The plan does not provide that each employee must receive eight additional quarters; the plan provides that an

8

employee may receive <u>up to</u> eight additional quarters. The interpretation of section VI, paragraph (5), by Reynolds was correct.

2. Section III, paragraph (8) - Rule of 65 Retirement Eligibility

Section III, paragraph (8), of the pension plan, which is known as the Rule of 65, governs eligibility for one form of early retirement. Paragraph (8) specifies that an employee with 20 or more years of pension service as of the last day worked, whose age and pension service equal 65 or more, and who has been absent from work for two years because of layoff is eligible to receive a Rule of 65 pension. Pension Plan § III (8). Two of the plaintiffs, Hammond and Whitten, were one quarter short of 20 years of pension service on March 31, 1999, when the Reynolds plants were shut down and the employees were laid off. Reynolds denied those two employees pensions under the Rule of 65, because neither had acquired 20 years of pension service as of the "last day worked," March 31, 1999.

The employees argue that they should have received credit for the second quarter of 1999, because they received wages in April 1999. This argument fails. Under the plain meaning of the phrase "last day worked," the last day the employees worked for Reynolds was March 31, 1999. As of April 1, 1999, the employees performed no work for Reynolds and were actually in the employ of another company. The interpretation of the Rule of 65 by Reynolds was correct.

9

3.  Rule of 70/80, 55/40, and 55/10 Pensions

The district court <u>sua</u> <u>sponte</u> dismissed the employees' claims for these benefits for lack of standing.  Because no named employee was eligible for these benefits when their complaints were filed, the district court correctly dismissed these claims.  See <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.</u>, 528 U.S. 167, 120 S. Ct. 693 (2000) (standing must exist when the action commences).  We are without jurisdiction to decide whether the interpretation of the plan provisions by Reynolds was correct.

The employees argue that, rather than <u>sua</u> <u>sponte</u> dismissing their claims, the district court should have permitted them an opportunity to amend their complaint to add a plaintiff with standing because this action is a putative class action.  The employees offer no authority to support this argument, and the employees failed in the five years of this litigation to move to amend their complaint to add a plaintiff with standing.  The district court did not abuse its discretion when it <u>sua</u> <u>sponte</u> dismissed these claims without providing the employees an opportunity to amend their complaint to add plaintiffs with standing.

4.  Supplemental Unemployment Benefits, Article III

Reynolds denied the employees supplemental unemployment benefits for two reasons.  First, Reynolds concluded that the employees were ineligible for a

benefit because they failed to comply with the reporting requirements of the plan, and second, if the employees were eligible, Reynolds calculated the benefit that would be owed to be a negative number. Because Reynolds is correct on the first ground, we need not consider the second ground.

The supplemental unemployment benefit plan required employees to satisfy several requirements before they would be eligible for benefits, at least one of which all of the employees failed to perform. Paragraph (c) of section 1 provided that, to be eligible for a weekly benefit, an employee must "[b]e available for work and maintain an active registration with the state employment service." SUB Plan Art. III section 1(c). The employees fail to identify any evidence in the record that any of the employees maintained an active registration with the state employment service. The employees instead were working for Wise.

5. Short-week benefits

The supplemental unemployment benefit plan provides that employees receive a "Short Week Benefit for any week in which some but less than thirty-two (32) hours are worked for the Company" provided that the employees have worked at least two continuous years for the Company. SUB Plan Art. V section 1. The benefit is calculated by taking the difference between 32 and the sum of the hours the employee did work and "did not work for reasons other than lack of work."

SUB Plan Art. V section 2. Because the Reynolds plants shut down on March 31, 1999, all of the former Reynolds employees worked less than 32 hours for Reynolds that week.

Reynolds denied short-week benefits because it concluded that the employees' work for Wise at the end of the week counted toward the total hours an employee worked in the week. Reynolds also argues that short-week benefits were not owed because the short-week benefit only applies when there is a decline in work due to an external factor, such as a power shortage, not to a plant shutdown. We agree with Reynolds that short-week benefits are not owed for both reasons.

First, the provision for short-week benefits provides that the benefit for a particular week

> will be calculated by multiplying the Employee's standard hourly wage rate by the difference between thirty-two (32) and the sum of the hours:
> (a) He worked in the week, and
> (b) he did not work but for which he was paid by the Company . . . , and
> (c) He did not work for reasons other than lack of work.

SUB Plan Article V section 2. Because all the employees worked at least forty hours in the week for which they claim short-week benefits, they were not entitled to a benefit. Any benefit calculated under this section would have been a negative benefit because the difference between thirty-two and forty, the hours the

employee "worked in the week" would be minus eight.

The employees argue that the hours they worked for Wise cannot be included in the short-week benefit calculation, but nothing in the language of the plan states that the hours the employee "worked in the week" must be for the Company. The employees are also not eligible for short-week benefits because they did not work fewer than thirty-two hours for the Company due to "lack of work." SUB Plan Art. V section 2(c). If the Reynolds employees worked a short week for the Company, they did so because of a plant shutdown and layoff, not because their hours were reduced due to a "lack of work." In other words, the employees are not owed these supplemental unemployment benefits because they were not unemployed.

*B. Summary Judgment Was Proper on the Breach of Fiduciary Duty Claim.*

Before the district court, the employees argued that Reynolds breached its fiduciary duty when it structured the sale to Wise to interfere with their benefits and when Reynolds misrepresented the employees' eligibility for supplemental unemployment benefits. The employees appeal the summary judgment on their claim for breach of fiduciary duty only with respect to the alleged misrepresentation of Reynolds. The employees argue that Reynolds breached its fiduciary duty when it failed to give its employees accurate information regarding

13

their eligibility for supplemental unemployment benefits. We disagree.

The employees contend that Reynolds made a material misrepresentation when it informed its employees that they would be ineligible for supplemental unemployment benefits under the plan and state unemployment benefits if they did not apply for and accept suitable employment with Wise. The employees allege that they relied on the misrepresentation to their detriment when they accepted employment with Wise. A claim for breach of fiduciary duty requires evidence that the plan fiduciary made material misrepresentations about the plan to the plan participants and the participants relied on that misrepresentation to their detriment. See Jones v. Am. Gen. Life & Acc. Ins. Co., 370 F.3d 1065, 1074 (11th Cir. 2004).

The employees' arguments fail for two reasons. First, Reynolds neither made a misrepresentation nor concealed material information when it communicated to its employees that, as Reynolds interpreted the plan, employment with Wise was suitable alternate employment and failure to accept that employment would disqualify an employee from the receipt of supplemental unemployment benefits. Second, and more importantly, the employees did not rely on the alleged misrepresentation of Reynolds to their detriment. The employees allege that they were injured because, had they not believed Reynolds, "they . . . would have refused employment with Wise, and would have applied for and

14

received full SUB and state umemployment benefits." In effect, the employees allege they were injured because Reynolds induced them to accept gainful employment at Wise, where they earned approximately 92 percent of their former salaries, when the employees would have preferred to collect unemployment benefits at 70 percent of their former salaries. Although we assume that the employees relied on the interpretation of the plan by Reynolds when they accepted employment with Wise, that reliance was not detrimental.

## IV. CONCLUSION

The summary judgment in favor of Reynolds is

**AFFIRMED.**

15