[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15794
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-00535-JSM-EAJ

CHARLOTTE BRADEN,

Plaintiff-Appellant,

versus

AETNA LIFE INSURANCE COMPANY,
FEDERAL EXPRESS CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 24, 2014)

Before ED CARNES, Chief Judge, TJOFLAT and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Charlotte Braden appeals the district court's grant of summary judgment to the defendants in her action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq.  She raises two challenges to the district court's decision.

I.

Like most large employers, Federal Express Corporation provides disability benefits for its workers who are injured on the job.  FedEx organizes those benefits under two plans.  The first is the Short Term Disability (STD) Plan.  It provides up to twenty-six weeks of paid leave for disabled workers.  Once an employee exhausts her twenty-six weeks under the STD Plan, she moves to the Long Term Disability (LTD) Plan.  The LTD Plan provides up to twenty-four months of additional paid leave.

An employee does not necessarily have to wait twenty-four months to receive her full LTD benefits.  Section 3.3(c) of the LTD Plan — which is the focus of this case — is a "Lump Sum Payment" provision.  It states that:

> If a Disabled Covered Employee has Permanent Occupational Restrictions and Limitations, as determined by the Claims Paying Administrator, which prevent him from returning to his regular occupation and if he is unable to find an available job with the Company within the time stated in the Company's applicable personnel policies and if the Company is unable to reasonably accommodate him, as required by applicable personnel policies and law, then such Covered Employee, upon the termination of his Employment Status, shall be paid a Lump Sum Present Value (not to be offset by amounts earned from employment with someone other

2

than Employer) equal to the remaining benefits available under the Plan for an Occupational Disability, but excluding in any case the value of any Pilot and Crew Member Supplementary Disability Benefit. The foregoing shall not prevent such Covered Employee from voluntarily resigning his position prior to the expiration of the period available for placement in another position, in which case the Lump Sum Present Value Payment shall be made at that time . . . .

FedEx gives its employees ninety days to search for an available job. So an employee is eligible for a lump sum payment under Section 3.3(c) if: (1) the "Claims Paying Administrator" determines that the employee has "Permanent Occupational Restrictions and Limitations" that prevent the employee from returning to her regular job, (2) the employee is unable in ninety days to find another job at FedEx that is available and for which she can perform the necessary duties, and (3) FedEx cannot reasonably accommodate the injured employee's restrictions and limitations so that a job is available in the ninety-day period. If those three criteria are met, then the employee "shall be paid" a lump sum for the amount of her remaining LTD benefits, offset by whatever she earns from another employer. There are two possible triggers for the payment: (1) FedEx terminates the employee, or (2) the employee resigns before the ninety-day period ends.

Braden hurt her back in 2008 while working as a FedEx Station Manager. As a Station Manager, Braden had to be able to lift seventy-five pounds and with assistance maneuver packages weighing over seventy-five pounds. Braden's treating physician, Dr. Howard Jackson, determined that her back injury prevented

3

that kind of heavy lifting, so she was placed on the STD Plan beginning August 24, 2010.[1]  Her twenty-six weeks of STD benefits ran out on February 21, 2011, and she moved to the LTD Plan.

On February 25, 2011, Braden received a letter from Deborah Lamp, a FedEx human resources worker.  The letter was titled "Return to Work with Permanent Restrictions."  It told Braden that:

> A review of your medical status indicates you have reached maximum medical improvement and have been released to return to work with permanent restrictions of no lifting over 10 [pounds] and no overhead reaching.  These restrictions limit your ability to perform the essential functions of your position [as a Station Manager].

The letter went on to inform her that she had ninety days to seek a position at FedEx for which she could perform the essential functions, but that she also had the option to "voluntarily resign within the 90 day period and receive a lump sum payout of your remaining disability benefits."  Braden applied for one position but was not hired.  She received a second letter from Lamp on August 26, 2011.  It told Braden that she had "reached maximum medical improvement and [was] permanently incapable of performing the essential functions of [her] position as a [Station Manger], with or without reasonable accommodation."  The letter went on to conclude that it was "necessary to terminate [Braden's] employment since [she

---

[1] Braden supplied additional documentation of her disability showing that she had three herniated cervical discs with nerve root impingement and radiculopathy.  We need not go into further detail because it is not necessary to decide this case.

4

had] been unable to return from [her] medical leave of absence." The August 26 letter did not mention any lump sum payment.

A few weeks later, Braden got more bad news. When FedEx terminated Braden, it notified Aetna Life Insurance Company, which serves as the "Claims Paying Administrator" for the LTD Plan. Over a period of several weeks AETNA investigated Braden's case. During its investigation, Aetna had Dr. Jackson complete a "Physician Report for the Federal Express Disability Claim Unit" form. In filling it out, Dr. Jackson indicated that Braden's workplace restrictions were not permanent.

At the conclusion of its investigation, Aetna determined that Braden was not owed any further benefits under the LTD Plan. It sent her a letter, dated September 13, 2011, informing her that she would not be receiving LTD benefits beyond August 25, 2011. In Aetna's view, Braden's LTD benefits ended that day because it was her last full day of employment before she was terminated. The letter justified that decision by citing Section 3.3(b)(6) of the LTD Plan, which states that "[t]he Disability Benefit shall cease to be paid to a Disabled Covered Employee [at] the termination of his Employment Status."

Braden then appealed the denial through the Plan's administrative process, arguing that she was entitled to a lump sum payment covering the eighteen months of disability benefits that she had not received. Aetna affirmed the denial of

5

benefits in a letter dated April 2, 2012.  The letter explained that Braden was not eligible for the lump sum payment under Section 3.3(c) because that provision applies only "if an employee has Permanent Restrictions and Limitations and is permanently unable to perform the essential duties of [her] job."  The letter reasoned that Braden did not qualify because "in [her] case the Permanent Restrictions and Limitations were imposed by Worker's Compensation and not [her] own physician.  If [her] provider had imposed Permanent Restrictions and Limitations which Aetna found to be appropriate, then [she] would have been eligible for a lump sum payment . . . ."

Braden then filed suit in federal district court against both FedEx and Aetna.  See 29 U.S.C. § 1132(a)(1)(B).  The district court granted summary judgment to the defendants.  This is Braden's appeal.

## II.

"In the context of an ERISA action we review a district court's grant of summary judgment de novo, applying the same legal standard that controlled the district court's determination."  Green v. Holland, 480 F.3d 1216, 1222 (11th Cir. 2007).  When reviewing a plan administrator's benefit-eligibility decision, courts in this circuit apply a six-step process:

(1)    Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)    If the administrator's decision in fact is "<u>de novo</u> wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)    If the administrator's decision is "<u>de novo</u> wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)    If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)    If there is no conflict, then end the inquiry and affirm the decision.

(6)    If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

<u>Melech v. Life Ins. Co. of N. Am.</u>, 739 F.3d 663, 673 n.14 (11th Cir. 2014)

(quoting <u>Blankenship v. Metro. Life Ins. Co.</u>, 644 F.3d 1350, 1355 (11th Cir.

2011)).

III.

Braden raises two contentions.  The first is that Aetna's decision to deny a lump sum payment under the Plan was arbitrary and capricious.[2]  To prevail, she must persuade us that "no reasonable basis exists for the decision."  <u>Shannon v. Jack Eckerd Corp.</u>, 113 F.3d 208, 210 (11th Cir. 1997).  Here, there was a reasonable basis for Aetna's decision.  As the district court pointed out, Dr. Jackson's answers on the "Physician Report for the Federal Express Disability

---

[2] As far as the six-step process is concerned, Braden challenge focuses on the district court's determination at the third step.  For expediency's sake, we will start there.  <u>See</u> <u>Doyle v. Liberty Life Assur. Co. of Boston</u>, 542 F.3d 1352, 1357–58 (11th Cir. 2008) (proceeding immediately to the third step where the claimant raised no issue with the first two).

7

Claim Unit" form indicated that Braden's restrictions and limitations were not permanent.  On that form, he checked "Yes" to the question "Is Your Patient Able to Work With Restrictions."  And he checked "No" to the questions:  "Are work restrictions permanent," and "Has your patient's condition reached a Permanent & Stationary status."  (Capitalization omitted.)  That opinion from Dr. Jackson — who was Braden's treating physician — provided evidence that Braden did not have "Permanent Occupational Restrictions and Limitations," which was a prerequisite to receiving a lump sum payment under Section 3.3(c).

Braden points to evidence in the record that suggests her Occupational Restrictions and Limitations were permanent.  But Aetna's decision to credit the most recent opinion of Braden's treating physician was not arbitrary and capricious.  See Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1279–80 (11th Cir. 2005) ("Giving more weight to the opinions of some experts than to the opinions of other experts is not an arbitrary or capricious practice.").  Braden's arguments for crediting other evidence in the record is the kind of second guessing that the arbitrary-and-capricious standard does not allow.  See id. at 1280 ("An administrator's determination must be upheld if it has a reasonable factual basis, even if the record also contains contrary information.").[3]

---

[3] For expediency's sake, we will not engage in a detailed analysis of the fifth and sixth steps of the summary judgment standard.  The district court ended its inquiry at the fifth step after concluding that there was no conflict of interest because AETNA makes the eligibility

8

Braden's second contention is that the defendants were equitably estopped from denying her the lump sum payment. To succeed under that theory, she must "show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." Jones v. Am. Gen. Life & Acc. Ins. Co., 370 F.3d 1065, 1069 (11th Cir. 2004).

Braden's equitable estoppel challenge relies on the February 25 letter that she received from Deborah Lamp, the FedEx human resources worker. She points to the portion of the letter telling her that: "Your disability benefits will continue for up to 90 days while you seek placement. You have the option to voluntarily resign within the 90 day period and receive a lump sum payout of your remaining disability benefits." In Braden's view, that letter qualifies as an interpretation of Sections 3.3(b)(6)[4] and 3.3(c) of the LTD Plan and interprets those sections in a manner that guarantees her a lump sum payment. Specifically, she argues that the

---

determinations, and FedEx pays the awarded benefits from a trust fund it maintains. See Blankenship, 644 F.3d at 1355 ("A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds."). Braden does not challenge that conclusion. We agree with the district court, and our review under the summary judgment standard is thus complete. See Melech, 739 F.3d at 673 n.14 ("If there is no conflict, then end the inquiry and affirm the decision.") (quotation marks omitted).

[4] Section 3.3(b)(6) states: "The Disability Benefit shall cease to be paid to a Disabled Covered Employee when the earliest of the following events occurs with respect to such Employees . . . the termination of his Employment Status . . . ."

9

interpretation gave her the option to resign without searching for an available job at FedEx.

Braden's argument overlooks the first requirement of our collateral estoppel doctrine, that there must be an ambiguity in the portion of the plan that Aetna used to deny her benefits claim. See id. at 1069; see also Kane v. Aetna Life Ins., 893 F.2d 1283, 1285 (11th Cir. 1990) (examining whether "[t]he provisions of the Plan at issue here are ambiguous"). As the district court correctly noted, the portions of the LTD Plan on which Aetna relied are clear and unambiguous. Section 3.3(c) explicitly states that employees cannot be eligible for a lump sum payment unless the employee "has Permanent Occupational Restrictions and Limitations, as determined by the Claims Paying Administrator." Nothing in Section 3.3(b)(6), or any other portion of the LTD Plan, suggests that a lump sum payment can be made without such a determination. Aetna was the "Claims Paying Administrator" for the LTD Plan, not FedEx, and Aetna determined that Braden did not meet the "Permanent Occupational Restrictions and Limitations" prerequisite in Section 3.3(c). Because that prerequisite was unambiguous, the defendants were not equitably estopped from relying on it.

Braden attempts to bolster her equitable estoppel argument by citing the Supreme Court's recent decision in CIGNA Corp. v. Amara, 563 U.S. —, 131 S.Ct. 1866 (2011). That decision addressed the question of whether a court can

10

alter the terms of the plan when the claimant has sued "to obtain other appropriate equitable relief" under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). See id. at 1871, 1880–82. Braden did not sue for equitable relief under that provision of the statute. Her amended complaint sought the remedies provided under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Those being: "to recover benefits due to [her] under the terms of his plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." The CIGNA decision therefore does not apply to Braden's claim. Additionally, none of Braden's briefing to the district court mentioned the possibility of receiving "other equitable relief" under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). Her failure to do so forfeits the issue on appeal. See Newmann v. United States, 938 F.2d 1258, 1264 (11th Cir. 1991) ("[W]e will not consider an issue not argued to the district court.").

**AFFIRMED.**

11