**Arnold Earl CHEAL, Ph.D., Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA and Matsushita Battery Industrial Corporation of America's Group Short Term and Long Term Disability Insurance Plan, d/b/a Cigna, Defendants.**

No. CIV.A. 1:03–CV–3000–RUIS.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 28, 2004.

Jeffrey S. Warncke, Dietrick Evans Scholz & Williams, Atlanta, GA, for Plaintiff.

H. Sanders Carter, Jr., Kenton Jones Coppage, Carter & Ansley, Atlanta, GA, for Defendants.

### *ORDER*

STORY, District Judge.

Now before the Court is Defendants' Motion to Partially Dismiss Plaintiff's Complaint [8–1]. After considering the entire record, the Court enters the following Order.

#### Background

Plaintiff Arnold Earl Cheal filed this suit against Defendants Life Insurance Company of North America ("LINA") and Matsushita Battery Industrial Corporation of America's Group Short Term and Long Term Disability Insurance Plan ("the

Plan") arising out of the denial of short-term and long-term disability benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The facts of the case are as follows.[1] Plaintiff Arnold Earl Cheal holds a doctorate in business administration and has had a long and distinguished career. At the time of the events that gave rise to this suit, Mr. Cheal was 60 years old and had been employed by Matsushita Ultra–Tech Battery Corporation ("Matsushita") as Manager of Planning for around a year.[2] This position required a high degree of cognitive functioning including the ability to learn and retain new information, organize and plan activities, and a high degree of concentration and judgment. In his first and only performance review, Mr. Cheal received a positive review and a performance-based raise.

In November 2000, Mr. Cheal suffered a stroke, although he did not know it immediately. After his stroke, Mr. Cheal's cognitive abilities significantly declined. Mr. Cheal began experiencing difficulties with attention and concentration, retaining new information, staying on task and meeting production norms. In early 2001, Mr. Cheal began noticing these problems before he realized why they had suddenly appeared. An April 2001 report from a family doctor noted that Mr. Cheal had been experiencing short-term memory loss and recommended tests to confirm a suspected stroke.[3] Mr. Cheal notified his employer of this information by email, stating that he had been experiencing short-term memory loss and that he "noted much difficulty in learning and understanding new concepts." Mr. Cheal's supervisors discussed the email in April 2001, and told Mr. Cheal not to discuss the topic with other employees.

On April 25, 2001, Mr. Cheal again visited his doctor, who noted short-term memory loss and wrote a statement restricting Mr. Cheal from working more than eight hours per day. This was a reduction from his usual schedule of fifty to sixty hours per week. Mr. Cheal provided this statement to his supervisor on April 26, 2001.[4] On May 1, 2001, Mr. Cheal's supervisor issued a written warning that criticized Mr. Cheal's work performance and noted that Mr. Cheal's performance was suffering in areas including: understanding of processes; understanding of methodology; knowledge of product line up; knowledge of vendors; and knowledge of information sources. On May 24, 2001, Mr. Cheal saw a neurologist, Dr. Sidhpura, who ordered additional tests. On May 28, 2001, Mr. Cheal notified his employer that his doctor suspected "brain stem stroke." On June 4, 2001, a brain MRI confirmed the stroke. Mr. Cheal's employer terminated his employment on June 8, 2001, stating on his separation notice that Mr. Cheal was "unable to do the job."

On the same day, June 8, 2001, Mr. Cheal advised LINA of his claim for short-term and long-term disability benefits under the Plan. The Plan is an "employee welfare benefit plan" as defined by

---

1. Unless otherwise noted, the facts are taken from Plaintiff's Complaint.

2. Matsushita Battery Industrial Corporation of America sponsored the ERISA employee welfare benefit plan at issue. Matsushita Ultra–Tech Battery Corporation is affiliated with Matsushita Battery Industrial Corporation of America and its employees were eligible to participate in the Plan. (*See* Mem. in Supp. of Def.'s Mot. to Partially Dismiss at 3.)

3. Plaintiff's Complaint refers to a report dated "April 11, 2002." Since it appears that the Plaintiff meant to refer to "April 11, 2001" the Court construes it as such.

4. Plaintiff's Complaint states that the statement was provided on "April 26, 2003." Since it appears that Plaintiff meant to refer to "April 26, 2001" the Court construes it as such.

ERISA, 29 U.S.C. § 1002(1). Defendant LINA is a claim fiduciary for the plan and makes all decisions regarding claims for benefits. LINA provided Mr. Cheal with disability claim forms. He completed them on July 8, 2001. On the claim forms for "Date of accident or beginning of sickness" he responded "Estimated fall of 2000." Dr. Sidhpura completed an attending physician's statement for LINA in which he confirmed the diagnosis of "right parietal stroke" and indicated June 8, 2001, the date of Mr. Cheal's termination from Matsushita, as the "Date first unable to work due to accident/illness." Mr. Cheal wrote to LINA in November 2001, December 2001 and January 2002 to inquire about the status of his claim. He received no response. On January 29, 2002, LINA mailed an unsigned letter dated September 10, 2001 denying his claim. The letter notified Mr. Cheal that his claim was denied because "there was no loss of time from your employment" and because LINA concluded that the medical files did not support "restrictions or limitations that would support your disability prior to your date of termination."

In March 2002, Mr. Cheal notified LINA of his intention to appeal (hereinafter "the Level One Appeal"). Mr. Cheal argued that although he was terminated in June 2001, he experienced disabling limitations beginning in late 2000. By a letter dated May 6, 2002, LINA advised Mr. Cheal that it was upholding its decision to deny benefits because there was "no evidence that supports you were in active service prior to the date you are indicating that you were unable to work due to your medical condition."

On May 20, 2002, Mr. Cheal requested additional review of his claim (hereinafter "the Level Two Appeal"). On the Level Two Appeal Mr. Cheal argued that the language of the policy indicated that he was covered "if [his] Active Service ends because of a Disability for which benefits under the Policy are or may become payable." Mr. Cheal inquired whether this language applied to his situation. In addition to his inquiries directed to LINA, Mr. Cheal also spoke with the Plan Administrator, Mr. John Rowe. By a letter dated July 17, 2002, Mr. Rowe advised LINA that the Plan agreed with Mr. Cheal's interpretation of the "Continuing Coverage" language. In August 2002 Mr. Cheal received a letter from LINA acknowledging receipt of Mr. Cheal's Level Two Appeal. The letter indicated that the file would be submitted for an independent review. In February 2003, Mr. Cheal again inquired and provided additional information in the form of a favorable Social Security Award.[5] Even though Mr. Cheal again wrote to LINA regarding his Level Two Appeal in April 2003, he never received a response.

Mr. Cheal's counsel requested a copy of LINA's claim file by a letter dated June 24, 2003. LINA produced the file on August 11, 2003. Mr. Cheal. filed suit against LINA and the Plan on October 2, 2003. Mr. Cheal's Complaint asserts claims for benefits, breach of fiduciary duty, and statutory penalties for failure to timely produce the claim file. Defendants LINA and the Plan have moved to partially dismiss Plaintiff's Complaint.

### Discussion

### I. Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. In considering whether to grant or deny such a motion,

---

**5.** The Administrative Law Judge concluded that Mr. Cheal lacked the residual functional capacity to perform the requirements of any past relevant work.

the Court may look only to the pleadings. Fed.R.Civ.P. 12(b). In addition, the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Conner v. Tate,* 130 F.Supp.2d 1370, 1373 (N.D.Ga.2001). Thus, a motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992). Motions to dismiss are disfavored and are rarely granted. *Gasper v. La. Stadium & Exposition Dist.,* 577 F.2d 897, 900 (5th Cir.1978); *Woodham v. Fed. Transit Admin.,* 125 F.Supp.2d 1106, 1108 (N.D.Ga.2000).

Defendants' Motion to Partially Dismiss asserts that: (1) Plaintiff may not recover interest pursuant to his claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), because the Plan terms do not expressly provide for the payment of interest; (2) Plaintiff's claim for breach of fiduciary duty fails to state a claim because Plaintiff has a remedy under ERISA § 502(a)(1)(B) which precludes a claim for relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and (3) Plaintiff's claim against LINA for failure to provide a copy of the claim file must fail because LINA was not an "administrator" of the Plan and cannot be held liable under § 502(c), 29 U.S.C. § 1132(c).

## II. Interest under ERISA § 502(a)(1)(B)

■ Defendants assert that Plaintiff may not recover interest in addition to his claim for benefits under § 502(a)(1)(B) unless the Plan terms provide for the payment of interest.[6] Defendants state that since the Plan terms do not provide for the payment of interest, Plaintiff is precluded from recovering interest under § 502(a)(1)(B). Plaintiff responds that Defendant has misrepresented Plaintiff's Complaint and states that he is not requesting interest under § 502(a)(1)(B) but rather is only requesting interest for breach of fiduciary duty under § 502(a)(3).[7] However, Plaintiff's assertion that he did not request interest pursuant to § 502(a)(1)(B) is contradicted by the language of the Complaint. Plaintiff's Complaint states "Plaintiff is entitled to short-term and long-term disability benefits under the Plan. Plaintiff is further entitled to interest on all past due amounts, pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) and/or 29 U.S.C. § 1132(a)(3)." (Pl.'s Compl. ¶ 52.) Therefore, the Court addresses the merits of Defendant's argument and concludes that Plaintiff may potentially recover prejudgment interest if he is successful on the merits of his claim for benefits under § 502(a)(1)(B).

First of all, the Court finds that Plaintiff's request for interest is "no more than an ordinary request for prejudgment interest on a judgment [that would be] obtained pursuant to a federal statute." *Skretvedt v. E.I. Dupont De Nemours,* 372 F.3d 193, 205 (3d Cir.2004). If Plaintiff were suc-

---

**6.** Section 502(a)(1)(B) provides that a civil action may be brought: (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

**7.** Plaintiff's response states that he merely requests interest in the *ad damnum* clause without specifying which subsection of ERISA the prayer is based on.

cessful in obtaining a recovery for benefits then the award of prejudgment interest under ERISA would be a matter committed to the sound discretion of the trial court. *Moon v. Am. Home Assurance Co.,* 888 F.2d 86, 89–90 (11th Cir.1989); *see Skretvedt,* 372 F.3d at 206–07 ("in the absence of an explicit statutory command otherwise, district courts have broad discretion to award prejudgment interest on a judgment obtained pursuant to a federal statute"); *Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 196 F.Supp.2d 1260, 1271 (N.D.Ga.2002) ("[T]he decision as to whether to award pre-judgment interest should be grounded in the question of whether such an award would succeed in making the wronged party whole."). If Plaintiff is able to recover benefits under § 502(a)(1)(B), then Plaintiff may be able to recover pre-judgment interest on the recovery.

Defendants assert that the holding in *Flint v. ABB, Inc.,* 337 F.3d 1326 (11th Cir.2003), precludes Plaintiff from recovering prejudgment interest. In *Flint,* an employee plan participant sued the plan administrator to recover interest on a payment for retroactive plan benefits. *Id.* at 1327. The plaintiff had been receiving disability payments for around three years when the plan administrator determined that he was no longer "totally disabled" within the meaning of the plan and notified him that benefits would be terminated. *Id.* at 1328. The plaintiff appealed the termination and ultimately the plan reinstated his benefits and he received payments retroactive for the period his benefits were terminated. The plaintiff sued under § 502(a)(1)(B) asserting a claim for the interest on the retroactive payments he had already received. The Eleventh Circuit Court of Appeals rejected the plaintiff's argument that payment of interest was an implied term of the plan, and held that "only benefits specified in the plan can be recovered in a suit under

section 502(a)(1)(B)." *Id.* at 1329 (quoting *Clair v. Harris Trust & Sav. Bank,* 190 F.3d 495, 497 (7th Cir.1999)). The court noted that since the plan did not provide for interest, the plaintiff failed to state a claim under § 502(a)(1)(B). *Id.* at 1329–30.

The Eleventh Circuit's holding in *Flint* is inapposite, however, because in *Flint,* the defendant voluntarily paid the plaintiff for retroactive benefits and the plaintiff attempted to assert a separate claim solely to recover interest on the payment. The *Flint* court held that § 502(a)(1)(B) which permits a claim "to recover benefits due to [plaintiff] under the terms of the plan" would not support an *independent claim* for interest unless it was permitted under the terms of the plan. Here, Plaintiff has asserted a claim to recover *benefits* under § 502(a)(1)(B), which Defendants do not challenge. Unlike the plaintiff in *Flint,* who had already received his benefits and who attempted to assert a claim for interest only pursuant to § 502(a)(1)(B), if Mr. Cheal prevails on the merits of his claim, he may be entitled to a *judgment* for benefits. If he is successful in recovering a judgment for benefits, then he may be able to recover prejudgment interest at the discretion of the Court. *See Smith v. Am. Int'l Life Assurance Co. of New York,* 50 F.3d 956, 957 (11th Cir.1995) (awarding prejudgment interest where plaintiff received judgment for benefits); *Florence Nightingale Nursing Serv. v. Blue Cross/ Blue Shield of Ala.,* 41 F.3d 1476, 1484 (11th Cir.1995) (upholding district court award of prejudgment interest where district court awarded health care provider reimbursement for medical services provided to plan participant); *Anthius v. Colt Indus. Operating Corp.,* 971 F.2d 999, 1009 (3d Cir.1992) ("[i]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law

is committed to the trial court's broad discretion").[8]

## III.   Interest under ERISA § 502(a)(3)

Although the Court has already determined that Plaintiff may be entitled to prejudgment interest generally for a judgment under a federal statute, Plaintiff also asserts that he may state an independent claim for interest under § 502(a)(3), which authorizes equitable relief. Defendant contends that Plaintiff's claim for breach of fiduciary duty under § 502(a)(3) fails to state a claim because Plaintiff has a remedy under § 502(a)(1)(B) which precludes his alternate claim for relief. Additionally, Defendant states that Plaintiff's claim for interest is essentially a legal claim that is impermissible under § 502(a)(3). Plaintiff responds that his claim for benefits under § 502(a)(1)(B) does not preclude his claim for interest under § 502(a)(3) for breach of fiduciary duty. Plaintiff asserts that he has stated an equitable claim for breach of fiduciary duty based on Defendants' undue delay in processing his claim and appeal and that he is entitled to an equitable remedy. In order to determine whether Plaintiff has stated a claim, the Court must first determine whether Plaintiff's claim for interest is an equitable claim cognizable under § 502(a)(3). Then the Court must examine whether this claim is precluded by his claim for benefits under § 502(a)(1)(B).

### A.   Whether Plaintiff may assert a claim for interest under § 502(a)(3)

■    Section 502(a)(3) authorizes a civil action "(3) by a participant, beneficiary, or fiduciary . . . (B) to obtain other appropri-ate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This section has been described as a "catch all" provision that provides a "safety net" to provide appropriate equitable relief for injuries caused by violations that § 502 does not adequately address elsewhere. *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Under this section "equitable relief" refers to "those categories of relief that were typically available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). In the past, several courts have authorized an award of interest as a form of equitable relief under § 502(a)(3). *See Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 229 (2d Cir.2002) ("Where interest is sought to make the plaintiff whole by eliminating the effect of a defendant's breach of a fiduciary duty, we see no reason why such interest should not be deemed 'appropriate equitable relief' within the scope of § 502(a)(3)(B)."); *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 498–99 (7th Cir.1999); *Fotta v. Trs. of the United Mine Workers of Am.*, 165 F.3d 209, 213 (3d Cir.1998) (stating that § 502(a)(3) is the appropriate vehicle for cause of action for interest on delayed payments).

These cases, however, were decided prior to the Supreme Court's decision in *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), which has been described as narrowing the interpretation of "appropriate equitable relief." *Flint*, 337 F.3d at 1330–31. There, the Supreme Court observed that ERISA is a

---

8. Defendants attempt to distinguish *Smith* and *Florence Nightingale* by stating that these cases merely discuss the interest rate to be used in calculating interest and do not discuss the propriety of the award itself. To the con-trary, these cases recognize the propriety of the interest award for prejudgment interest when a plaintiff recovers a judgment pursuant to a federal statute such as ERISA.

"comprehensive and reticulated statute," and that the Court has emphasized its unwillingness to infer causes of action in the ERISA context. *Id.* (quoting *Knudson,* 534 U.S. at 209, 122 S.Ct. 708). In *Knudson,* the plaintiff health care plan brought a claim for specific performance of a reimbursement provision of the plan against the beneficiary of the plan. 534 U.S. at 183, 122 S.Ct. 694. The beneficiary had been involved in an automobile accident, and filed suit against the auto manufacturer and others and received a settlement in her favor. *Id.* at 207, 122 S.Ct. 694. Only a portion of the settlement was allocated to reimburse the health care plan. *Id.* The Court held that the plaintiffs were essentially seeking to impose personal liability on defendants for a contractual obligation to pay money, and stated that "[a] claim for money due and owing under a contract is quintessentially an action at law." *Id.* at 210, 122 S.Ct. 694. The Court held that the plaintiff could not recover under § 502(a)(3) because even though the plaintiff characterized her claim as an equitable claim, it was actually a legal claim because the plaintiff did not seek to recover from a particular fund or property in the defendant's possession but rather to impose personal liability on defendants. *Id.* at 214, 122 S.Ct. 694.[9] The Court recognized that a recovery for restitution may be for restitution at law or restitution at equity, and only the latter could be considered "appropriate equitable relief" under § 502(a)(3). *Id.* at 213, 122 S.Ct. 694.[10] "The Court's decision in *Knudson,* therefore, raises the question whether § 502(a)(3) ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity." *Flint,* 337 F.3d at 1331.

In *Flint,* the Eleventh Circuit did not reach the issue, holding instead that even assuming that § 502(a)(3) permitted the recovery of interest, the plaintiff had failed to state a claim, in part, because he failed to plead facts which would show that the defendant unduly delayed in the appeals process or wrongfully refused to reinstate his benefits. *Id.* In order to determine whether § 502(a)(3) allows an award of interest for delayed benefits after *Knudson,* and since the Eleventh Circuit has yet to specifically address this question, the Court looks to decisions rendered in other circuits that have considered the effect of *Knudson* on claims for interest for breach of fiduciary duty under § 502(a)(3).

While the decision in *Knudson* has been described as narrowing the interpretation of appropriate equitable relief, it did not so much "narrow" the definition of equity as it reaffirmed the requirement that relief sought must in fact be equitable relief as opposed to legal relief in "equitable" dress. In *Parke v. First Reliance Standard Life Insurance Co.,* 368 F.3d 999, 1006–07 (8th Cir.2004), the district court awarded prejudgment interest to the plaintiff beneficiary seeking long-term disability benefits for a period when the plaintiff's benefits were

---

**9.** The settlement in the defendant's favor had already been dispersed to various parties. *Id.* at 207–08, 122 S.Ct. 708. The Court stated that the plaintiff's claim, whether labeled as an injunction to compel the payment of money past due under a contract, specific performance of a past due monetary obligation, or restitution, did not constitute the type of relief that was typically available in equity. *Knudson,* 534 U.S. at 210–18, 122 S.Ct. 708.

**10.** For instance, the Court recognized that while restitution may be an equitable remedy it can also be a legal remedy. 534 U.S. at 213, 122 S.Ct. 708. Whether it is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies. *Id.* Therefore, for restitution to lie in equity, the action generally must seek to restore to the plaintiff particular funds as opposed to impose personal liability on the defendant. *Id.* at 214, 122 S.Ct. 708.

wrongfully delayed. *Id.* at 1003. The defendant plan administrator argued that the *Knudson* decision narrowed the definition of appropriate equitable remedy and that interest was no longer a permissible remedy. *Id.* at 1006–07. Since the district court had awarded interest pursuant to the theory of accounting for profits, an undisputed equitable remedy, the court stated that the pertinent inquiry was whether the award of interest could actually be considered an accounting for profits, or whether it represented a legal claim disguised in equitable terms. *Id.* at 1007. The court stated that "[u]nder traditional rules of equity, a defendant who owes a fiduciary duty to a plaintiff may be forced to disgorge any profits made by breaching that duty, even if the defendant's breach was simply a failure to perform its obligations under a contract." *Id.* at 1008. Therefore, the court held that the defendant could be forced under § 502(a)(3) to disgorge any profits it earned as a result of that wrongful conduct. *Id.* at 1009. Because this was a remedy typically available in equity, it was permissible after *Knudson.* *Id.*

Similarly, in *Skretvedt,* the plaintiff sued for payment of disability benefits, including claims for interest based on the delay in payment. *Id.* at 195. In a matter of first impression before the Third Circuit, the court held that the Supreme Court's decision in *Knudson* did not apply to the plaintiff's claim for prejudgment interest with respect to benefits awarded pursuant to a court judgment under ERISA § 502(a)(1)(B). *Id.* at 205, 122 S.Ct. 708. Additionally, the court upheld the plaintiff's separate claims for interest with respect to benefits which his employer had already voluntarily paid and concluded that *Knudson* does not preclude a claim under ERISA § 502(a)(3) for restitution by way of a constructive trust with respect to interest earned on withheld benefits. *Id.* at 209–10, 122 S.Ct. 708. The court

examined the ability to assert an independent claim for interest after *Knudson* and concluded that the plaintiff was able to seek appropriate equitable relief in the form of a constructive trust to force the defendant to disgorge the gain it received on his withheld benefits under a restitutionary theory. *Id.* at 214. Furthermore, the court stated that the ERISA plan's funds provided the specific property in the defendant's possession, as opposed to imposing personal liability. *Id.*

■ Based on the reasoning of the Eighth and Third Circuits, the Court agrees that it would be possible for a plaintiff to state a claim under § 502(a)(3) to recover interest for breach of fiduciary duty.

## B. Whether Plaintiff's claim for interest under § 502(a)(3) is precluded by his claim for benefits under § 502(a)(1)(B)

This does not end the inquiry, however, because Defendants assert that even if Plaintiff could state a claim for interest under § 502(a)(3), Plaintiff's ability to recover under § 502(a)(1)(B) precludes relief. The Court agrees. As outlined above, it may be possible for a plaintiff to state a claim for equitable relief to recover interest for a breach of fiduciary duty under § 502(a)(3). Under this theory, the remedy must be an equitable one. Based on the facts before the court, Plaintiff here is unable to recover under § 502(a)(3) because the relief he seeks is essentially the same as he would be entitled to under § 502(a)(1)(B).

■ An ERISA plaintiff who has an adequate remedy under § 502(a)(1)(B) cannot alternatively plead and proceed under § 502(a)(3). *Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1089 (11th Cir.1999). Even if the plaintiff's claim under § 502(a)(1)(B) is lost, the fact

that the plaintiff had a remedy will still preclude a claim for equitable relief under § 502(a)(3). *Ogden v. Blue Bell Creameries, Inc.*, 348 F.3d 1284 (11th Cir.2003) (stating that where at the time the plaintiffs' cause of action arose § 502(a)(1)(B) provided them with an adequate remedy, plaintiffs could not have pleaded or proceeded under § 502(a)(3)); *Katz*, 197 F.3d at 1089 (stating that availability of an adequate remedy under the law does not mean, nor does it guarantee, an adjudication in one's favor and plaintiff's claim under 502(a)(3) was precluded even though she did not prevail on merits of 502(a)(1)(B)); *see Varity*, 516 U.S. at 515, 116 S.Ct. 1065 (stating that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief").

In this case Plaintiff attempts to assert a cause of action for benefits and a separate cause of action for interest on those benefits based on a breach of fiduciary duty for undue delay. As the Court has already stated, should Plaintiff ultimately recover benefits then he may be entitled to prejudgment interest on those benefits. This is not a case, however, such as *Flint*, where the plaintiff has already received benefits and seeks to recover solely for interest. If that were the case he could not proceed under § 502(a)(1)(B) but may be entitled to recover under § 502(a)(3).[11] By contrast, all the relief Plaintiff seeks is available to him under § 502(a)(1)(B). Therefore, Plaintiff is precluded from stating an alternative basis for relief under § 502(a)(3).[12] Plaintiff's claim to recover interest for breach of fiduciary duty is due to be dismissed.

## IV. Statutory Penalties under ERISA § 502(c)

In Count III of Plaintiff's Complaint, Plaintiff asserts a claim for statutory penalties under § 502(c) for failure to timely provide a copy of the claim file documents that he requested. Defendant LINA asserts that because it was not designated as the "plan administrator" then it cannot be held liable under § 502(c). Plaintiff asserts that LINA acted as a "claim fiduciary" and that LINA made decisions concerning denial of Plaintiff's benefits, processed his claims and communicated with Plaintiff regarding his claims. Under ERISA § 502(c),

> [a]ny administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the

**11.** The Court notes that reading *Flint* to preclude an award of prejudgment interest altogether would require Courts to reach an absurd result in cases where benefits are wrongfully withheld that is contrary to the purposes of ERISA. If that were the case, a defendant that wrongfully withheld benefits but then voluntarily corrected its mistake and paid retroactive benefits could potentially be held liable for interest on those benefits under ERISA § 503(a)(3). By contrast, where a the defendant continued to refuse to pay benefits and the plaintiff was required to sue to recover them under § 502(a)(1)(B) the plain-

tiff would be unable to recover interest at all because the plaintiff would be prevented from asserting a separate claim for interest under § 502(a)(3) based on his available remedy under § 502(a)(1)(B). This type of expansion of *Flint* would create a perverse incentive for ERISA Plans to withhold benefits as long as possible. The Court declines to expand *Flint* in this way.

**12.** Since Plaintiff may not state a claim for breach of fiduciary duty, the Court need not determine now, whether the Plan is a fiduciary.

court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c). Under ERISA, an "administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). In *Rosen v. TRW, Inc.*, 979 F.2d 191 (11th Cir.1992), the Eleventh Circuit adopted the reasoning of a First Circuit case and held "that if a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document." *Id.* at 193–94; *see Law v. Ernst & Young*, 956 F.2d 364, 373–74 (1st Cir.1992).[13] The court emphasized that dismissal of the plaintiff's complaint at the motion to dismiss stage of litigation would deprive him of any remedy in the event that the company ultimately was found liable for assuming control of the plan's administration. *Id.* Therefore, the proper inquiry on a motion to dismiss is whether the defendant had sufficient decisional control over the claim process that would qualify it as a plan administrator under *Rosen*. *Hamilton v. Allen–Bradley Co., Inc.*, 244 F.3d 819, 824 (11th Cir.2001). This inquiry requires an analysis of the facts surrounding the administration of the disability plan. *Id.*[14]

■ In *Rosen* the plan documents named an administrative committee as the plan administrator. 979 F.2d at 192. The plaintiff alleged, however, that the committee was unidentified and an inactive entity that was the alter ego of the company. *Id.* at 193. The court held that the plaintiff may be able to show that the company had assumed control of the plan's administration and so dismissal was improper. *Id.* at 194. In this case, Plaintiff asserts that LINA acted as a claim fiduciary, and administered his claim including providing him claim forms to complete, making a decision on his claim, and notifying him of this decision. *See Law*, 956 F.2d at 374 (stating that fact that company employees used company stationary to communicate to the plaintiff regarding his benefits and made no effort to separate acts of the company from administration of the plan supported finding that company assumed control of the plan). Additionally, Plaintiff asserts that he requested his file by a letter dated June 24, 2003 but did not receive the items requested until August 11, 2003. Because Plaintiff's allegations state sufficient facts that LINA controlled the administration of the Plan, dismissal is not proper as to this claim.

## Conclusion

Defendants' Motion to Partially Dismiss Plaintiff's Complaint [12–1] is hereby **GRANTED in part and DENIED in part.** As to Count I, Defendants' Motion to Partially Dismiss is **DENIED.** Plaintiff may be able to recover prejudgment interest based on recovery on a federal statute if

13. The *Rosen* court discussed the First Circuit decision in *Law v. Ernst & Young*, 956 F.2d 364, 373–74 (1st Cir.1992). The court held that allowing a plaintiff to recover against an entity that held itself out as a plan administrator even though they were not named in the plan documents was "consistent with Congress's intent to give employees a remedy when they are denied information about their ERISA benefits." *Law*, 956 F.2d at 373. The court recognized that to hold otherwise would be to deny the employee redress because the entity named in the documents would be immune because another entity handled the actual administration. Likewise, the entity actually administering the claims would be immune because they were not named in the plan documents. *Id.*

14. Although Defendant points to cases on other circuits to the contrary, this Court is bound to follow the decisions of the Eleventh Circuit. *See Hamilton*, 244 F.3d at 824 (rejecting defendant's reliance on law of other circuits and stating that "[b]ecause there is law going in the opposite direction in this circuit, we are bound to follow the law of our circuit and [defendant's] argument is without merit.")

he prevails on his claim for benefits under ERISA § 502(a)(1)(B). As to Count II, Defendant's Motion to Partially Dismiss is **GRANTED**. Plaintiff's claim to recover interest for breach of fiduciary duty under ERISA § 502(a)(3) fails to state a claim because Plaintiff has a remedy under ERISA § 502(a)(1)(B) which precludes a claim for relief. As to Count III, Defendant's Motion to Partially Dismiss is **DENIED**.