[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-10241

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 13, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-01305-CV-HS-W

HERMAN J. GREEN,
on behalf of himself and a class of persons similarly situated,

Plaintiff-Appellant,

versus

MICHAEL H. HOLLAND,
MARTY D. HUDSON,
STEVEN F. SCHAAB,
 B. V.  HYLER,
as Trustees of the United Mine Workers Pension Trust,
UNITED MINE WORKERS OF AMERICA 1974 PENSION TRUST, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 13, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and NANGLE,* District Judge.

_____

*Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of
Missouri, sitting by designation.

BIRCH, Circuit Judge:

Plaintiff-Appellant Herman Green brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, seeking to recover accrued interest on his disability benefits, which were delayed but eventually paid under his pension plan. The district court granted summary judgment in favor of defendants-appellees, the Trustees of the plan, the pension Trust, and the plan itself. Green now appeals that decision, arguing that the district court acted improperly in granting summary judgment on all of Green's claims. Upon review, we conclude that: (1) Green's attempt to allege a cause of action for interest under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is clearly precluded by our decision in Flint v. ABB, Inc., 337 F.3d 1326 (11th Cir. 2003); and (2) because Green has not presented evidence that the appellees violated ERISA or breached the terms of the pension plan in processing his disability claim, he is not entitled to interest pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Accordingly, we AFFIRM the district court's judgment.

## I. BACKGROUND

The facts of Green's case are undisputed. Green was employed as a coal miner with Jim Waters Resources, Inc., in Tuscaloosa, Alabama. As an employee, Green was offered employee benefits through the United Mine Workers of America 1974 Pension Trust ("the Trust"), an employee benefit trust included with

2

a number of other trusts in the United Mine Workers of America Health and Retirement Funds. The Trust is administered by appellees Holland, Hudson, Schaab, and Hyler (collectively, "the Trustees"). The benefits that the Trust provides to employees are set forth at length in the United Mine Workers of America Pension Plan of 1974 (the "Plan"), which is subject to ERISA.

The Plan provides a monthly disability benefit for employees who become totally disabled as a result of a mine accident. The Plan states, in pertinent part, that a participant with a specified number of years of service who "becomes totally disabled as a result of a mine accident" shall "be eligible for a pension while so disabled." R1-33, Exh. A at 7. The Plan further provides a definition of "totally disabled":

> A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance [SSDI] Benefits under Title II of the Social Security Act or its successor.

Id. Thus, in order to be eligible for a disability pension benefit under the Plan, a claimant must establish: (1) that he was involved in a mine accident; (2) that he has been awarded SSDI benefits, thus conclusively establishing that he has a disability; and (3) that the mine accident proximately caused, or was substantially responsible for, the disability. See, e.g., McCoy v. Holland, 364 F.3d 166, 170 (4th Cir. 2004) (construing the requirements needed to attain disability benefits under the Plan).

3

The Plan provides that "[t]he Trustees . . . shall have full and final determination as to all issues concerning eligibility for benefits." R1-33, Exh. A at 32.

The other relevant Plan provision pertains to the timing of the monthly pension benefits–disability or otherwise. The Plan states that "[t]he first payment on any pension shall be made as soon as possible after an application for pension has been received. . . ." R1-33, Exh. A at 15. The Plan also states that the first benefit payment shall be made "for the month following the month in which the Participant retires and becomes eligible for a pension in accordance with Article II [the Eligibility section of the Plan] . . . ." Id.[1]

Green filed an accident report with his employer in May of 1990, indicating that he had been injured on the job on 9 March 1990 while operating a Terex pan, a piece of heavy equipment. The accident report suggested that Green suffered back strain as a result of the incident. Green, however, did not seek disability benefits at that time.

Over three years later, in October 1993, Green applied for SSDI benefits from the Social Security Administration, claiming a disability due to a back strain from an on-the-job injury. His SSDI application was denied in 1994, and Green

---

[1] Generally speaking, the Plan correlates a Plan participant's entitlement to a pension with the participant's "retirement." R1-33, Exh. A at 4. In the context of disability benefits, a Plan participant who becomes totally disabled as a result of a mine accident and ceases working is said to be subject to "Disability Retirement," and is thereby eligible for a pension while so disabled. See id. at 7.

4

sought reconsideration of that denial. Meanwhile, while the appeal of his SSDI application was pending, in 1995 Green applied for a disability pension with the Trustees, pursuant to the terms of the Plan. He maintained that his injury had occurred on 9 March 1990, and described the injurious event as a continuous bouncing up and down that had caused him back pain. In February 1996, the Trustees contacted Green and inquired whether he had received an SSDI award. Green advised that he was still awaiting a decision on his SSDI benefits. On 8 July 1996, the Trustees denied his claim for disability benefits, based on the fact that he had not yet established that he was eligible for SSDI benefits, which is a prerequisite for total disability benefits under the Plan. Subsequent to the Trustees' denial, the separate denial of Green's SSDI benefits was upheld on appeal by an Administrative Law Judge ("ALJ").

In November 1997, however, the Appeals Council of the Social Security Administration vacated the ALJ's decision on the SSDI benefits and remanded Green's case, ordering that additional medical evidence, including psychiatric evidence, be obtained and considered. After a different ALJ reviewed Green's medical records, he concluded that Green suffered from chronic back pain from an on-the-job injury that had occurred in 1990. Accordingly, on 2 May 1998, the ALJ found that Green was disabled as of 1993 (the time Green began to complain of pain, and, eventually, ceased working) due to degenerative disc disease of the

5

lumbar and cervical spine, hiatial hernia, duodenal ulcer, and adjustment disorder with depression. Therefore, on 2 May 1998 the ALJ awarded Green SSDI benefits.

A year later, on 18 May 1999, the Trustees received a copy of Green's 1998 SSDI award, and thus Green's file was reopened. Upon further review, however, the Trustees again denied Green's application for a disability pension, based this time on their conclusion that the evidence concerning the alleged 9 March 1990 incident was too indefinite to meet the Plan's definition of a "mine accident."[2]

In their assessment of Green's claim, the Trustees first observed that the accident report only stated that Green had suffered back strain while operating a Terex pan, but that the records failed to reflect a definite injurious event that caused his disability. The Trustees also noted that Green did not seek medical treatment for the putative injury until May of 1990, three months after the alleged incident, and that he had continued to operate heavy equipment at that time. In addition, the Trustees observed that Green's medical records reflected intermittent complaints of back pain every six months or so, without any additional trauma. In light of this evidence, as well as the ALJ's SSDI award, the Trustees determined that Green's hiatial hernia and duodenal ulcers bore no causal relationship to the

---

[2] The Trustees prepared a series of Guidelines to assist in interpreting the provisions of the Plan. According to those Guidelines, an incident will be considered a "mine accident" for purposes of the Plan if it occurred at a definite time and place; if it is in the nature of a definite occurrence or event (as opposed to a degenerative disease); and if it was caused by physical impact from some external force or object (rather than simply the result of a mine worker's own physical condition).

alleged mine accident; that his degenerative disc disease was a progressive condition rather than an injurious event; and that his cervical problems were likely brought about by a separate 1993 automobile accident and were not work-related.

After explaining the basis for the Trustees' denial, Green requested, and was granted, an extension of time to submit additional evidence concerning his 1990 mine accident. Upon a second review, however, the Trustees again denied Green's claim in April 2000, based on their conclusion that his alleged injury was too indefinite, both in terms of when the claimed injury occurred and what the injury-causing event was.

Thereafter, litigation ensued. Green sued the Trustees in state court in 2000, alleging the wrongful denial of his disability pension benefit. In February 2001, the Trustees advised Green that if he would agree to dismiss his action, they would permit him to submit additional medical evidence and would agree to re-consider his claim for total disability pension benefits. Consequently, the case was dismissed, and Green submitted additional evidence to the Trustees in July 2001 concerning the nature of his injury, including his testimony that the injury on 9 March 1990 had been caused instantly from hitting a bump while he was driving mining equipment. Additional evidence was submitted in March 2002, and a hearing was held on Green's application on 29 March 2002.

In April 2002, after re-reviewing the record in its entirety, including Green's

newly submitted evidence, the Trustees concluded that Green's incident did indeed meet the definition of a "mine accident" under the Plan. Specifically, the Trustees concluded that the new evidence established that Green had been injured by a definite, injurious event. They found credible a written statement from Green's co-worker, indicating that Green had complained aloud of back pain after his equipment had hit a pothole. The Trustees also observed that Green's new evidence suggested that the equipment he had been driving was repaired around the time he was injured, thereby suggesting that its shock absorbers may have been in a damaged or defective condition when the machine hit the pothole.

After conclusively determining that the 1990 incident was a bona fide mine accident for purposes of the Plan, the Trustees conducted an additional investigation to determine if the 1990 accident had contributed substantially to Green's disability, which commenced in late 1993. After that investigation, the Trustees notified Green in November of 2002 that his application for a disability pension benefit had been approved. The effective date of the pension was January 1994, and the Trustees remitted a check to Green for all monthly pension payments from the effective date of January 1994 up through December 2002. Green was also advised by the Trustees that he would henceforth receive future monthly disability payments at the start of each month.

After receiving his lump sum payment reflecting eight years' worth of

8

pension benefits, Green inquired as to whether he was entitled to interest on the amount that the Trustees had paid retroactively. The Trustees advised that Green was not entitled to interest on the retroactive payment, because there was no provision in the Plan allowing for such interest.

After receiving the Trustees' response, in June 2005 Green brought the present action, pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), in the Northern District of Alabama, naming as defendants the Trustees, the Trust, and the ERISA Plan (hereinafter, collectively, "the Trustees"). Green's complaint sought interest on the benefits that had been retroactively paid out of the Trust. His action was brought on behalf of himself and all persons similarly situated who had received retroactive benefit payments under the Plan but had not received any interest on those payments. After a period of discovery, both parties moved for summary judgment.

In a well-reasoned and thorough opinion, the district court granted summary judgment for the Trustees on all of Green's claims. The district court found that Green could not recover interest under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), because our holding in Flint precluded a claimant from bringing an independent claim for interest under ERISA § 502(a)(1)(B) unless the Plan, by its own terms, provided for interest. The district court also found that Green could not recover interest by construing it as "other equitable relief" pursuant to ERISA §

9

502(a)(3), 29 U.S.C. § 1132(a)(3), since the Trustees' conduct did not amount to either a violation of ERISA or a breach of the Plan's terms. Because there were no disputed issues of material fact and Green's ERISA claims failed as a matter of law, the district court granted summary judgment to the Trustees. In doing so, the court concluded that Green's motion for class certification was moot. This appeal followed.

## II. DISCUSSION

On appeal, Green contends that the district court erred in granting summary judgment to the Trustees. In the context of an ERISA action we review a district court's grant of summary judgment de novo, applying the same legal standard that controlled the district court's determination. Williams v. Bellsouth Telecomms., Inc., 373 F.3d 1132, 1134 (11th Cir. 2004). Under that standard, summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Green's argument on appeal is essentially two-fold. First, he contends that he is entitled to bring a cause of action for interest on his delayed pension payment under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), since interest is an implied "benefit" under the terms of the Plan. Second, and as an alternative theory, Green argues that he is entitled to sue to recover interest on his benefit

payment pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), since interest

falls within the rubric of "other appropriate equitable relief."[3]  We address each of

these contentions in turn.

A.  Green's Claim for Interest under ERISA § 502(a)(1)(B)

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), permits a

participant or beneficiary of a pension plan to bring a civil action "to recover

benefits due to him under the terms of his plan."  Green contends that the accrued

interest on his delayed benefits constitutes a separate "benefit[] due to him under

the terms of his plan," see id., and that therefore he should be permitted to recover

interest under ERISA § 502(a)(1)(B).  The Trustees counter that the Plan

documents do not expressly provide for a payment of interest, and that §

502(a)(1)(B), by its language, only permits a claimant to obtain "benefits" that are

provided "*under the terms of the plan.*"  Id. (emphasis added).  Although Green

concedes that the Plan makes no explicit mention of accrued interest in its

description of the Plan benefits, he argues that we should construe interest as an

"implied term" of the Plan.  See, e.g., Dobson v. Hartford Fin. Servs. Group, Inc.,

389 F.3d 386, 390-91, 398 (2d Cir. 2004) (finding that a pension plan implicitly

_____

[3] In addition to these substantive legal arguments concerning the availability of an interest recovery under ERISA §§ 502(a)(1)(B) and 502(a)(3), Green also appeals the district court's denial of class certification as to his action against the Trustees.  As is discussed subsequently, however, because we conclude that Green's ERISA claims fail as a matter of law, his argument concerning the propriety of class certification is rendered moot.

11

calls for interest on disability payments, and concluding that, because interest is an implied benefit under the plan, a claimant may seek to recover interest pursuant to ERISA § 502(a)(1)(B)).

We are reluctant, however, to imply benefits into the terms of an employer pension plan where such benefits are not expressly designated. Moreover, as the Trustees properly point out, our decision in Flint, 337 F.3d at 1329-30, in which we held that a claimant could not bring an independent action to recover interest under § 502(a)(1)(B) where the pension plan did not expressly provide for interest, clearly precludes Green from bringing the present action.

In Flint, a claimant who was awarded retroactive disability benefits from his employer–via a lump sum payment–subsequently brought an action in federal court pursuant to ERISA § 502(a), seeking to recover interest on the retroactive benefits. Id. at 1328. As in this case, in Flint the pension plan documents were silent regarding the payment of accrued interest on delayed benefits; nevertheless, the claimant argued that, as a "default rule," interest should normally be recoverable, even if the plan documents did not expressly address the issue. Id. at 1329. We rejected this contention, concluding that, where an employee-benefit plan failed to expressly provide for accrued interest as a plan benefit, ERISA § 502(a)(1)(B) would not permit a claimant to bring a stand-alone cause of action to

12

recover such interest. Id. at 1329-30.[4] Our approach in Flint was congruent with

the earlier decision of the Seventh Circuit in Clair v. Harris Trust & Savings Bank,

in which that court rejected a claimant's independent action for accrued interest on

delayed benefits under ERISA § 502(a)(1)(B). See 190 F.3d 495, 497 (7th Cir.

1999) ("[I]nterest is not a benefit specified anywhere in the plan, and only benefits

---

[4] Green misconstrues the scope of Flint's holding with respect to § 502(a)(1)(B) relief, and, in so doing, he erroneously suggests that Flint has been "rejected" by other circuits and by courts within the Eleventh Circuit–a contention that does not withstand close scrutiny.

Flint only addressed the narrow question of whether a claimant could bring a *stand-alone* cause of action for interest under § 502(a)(1)(B) in the absence of any plan provision providing for interest. See, e.g., Cheal v. Life Ins. Co. of N. Am., 300 F. Supp. 2d 1347, 1352 (N.D. Ga. 2004) (properly construing Flint as addressing solely the question of whether § 502(a)(1)(B) would "support an *independent claim* for interest" in the absence of any plan provision providing for it).

Flint did not, however, create a per se prohibition on a recovery of interest under § 502(a)(1)(B); in fact, the Flint decision leaves open the prospect of an ERISA claimant litigating and recovering an award of benefits that are due and unpaid under § 502(a)(1)(B) and receiving, as part of that benefits award, interest on those benefits from the time they were due. If, for example, a plan participant sued to obtain a "benefit due . . . under the terms of his plan" pursuant to § 502(a)(1)(B) and was eventually successful in attaining a judgment awarding benefits, nothing in Flint would preclude the trial court from including interest in as part of its ultimate benefits award. See, e.g., Cheal at 1352 ("[I]f Mr. Cheal prevails on the merits of his claim, he may be entitled to a judgment for benefits. If he is successful in recovering a judgment for benefits, then he may be able to recover prejudgment interest at the discretion of the Court.") (emphasis omitted). This is so, since, as we have stated, "[t]he award of an amount of prejudgment interest in an ERISA case is a matter committed to the sound discretion of the trial court." Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama, 41 F.3d 1476, 1484 (11th Cir. 1995) (citation and internal quotations omitted); accord Skretvedt v. Dupont, 372 F.3d 193, 208 (3d Cir. 2004) ("[A]n ERISA plaintiff who prevails under § 502(a)(1)(B) in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award.").

Green's case, however, is *not* an scenario where Green successfully obtained "benefits due" under § 502(a)(1)(B) pursuant to a court judgment and then sought to obtain interest as part of that larger award; rather, his case involves a wholly separate, stand-alone cause of action for interest with no concomitant "benefits" award. Because Green's case involves an independent cause of action for interest under § 502(a)(1)–wholly separate from a successful action for "benefits"–his case is more analogous to the atypical type of claim that we rejected in Flint.

13

specified in the plan can be recovered in a suit under § 502(a)(1)(B).") (Posner, J.).

Flint is binding precedent in this circuit,[5] and it is plainly controlling in Green's case. As in Flint, Green seeks to bring a stand-alone action for accrued interest on benefits that were delayed but eventually paid out in a retroactive, lump sum payment, despite the fact that the pension Plan at issue fails to provide for interest as a benefit. Because a cause of action under § 502(a)(1)(B) is limited to those claimants seeking to recover "benefits due to [them] under the terms of [the] plan," and because Flint makes clear that an independent cause of action for interest will not lie under § 502(a)(1)(B) when the pension plan fails to provide for such interest as a benefit, the district court acted properly in concluding that Green's § 502(a)(1)(B) claim failed as a matter of law.

B. Green's Claim for Interest under ERISA § 502(a)(3)

Green's alternative approach to pursuing interest on his retroactive disability

_____

[5] Green does not dispute the precedential impact of Flint; in fact, at oral argument he agreed that Flint precluded his claim for accrued interest under § 502(a)(1)(B). Instead, Green encourages us to overrule our decision in Flint. However, "[a] prior panel decision of this Court is binding on subsequent panels and can be overturned only by the Court sitting en banc." Morrison v. Amway Corp., 323 F.3d 920, 929 (11th Cir. 2003) (quoting Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)).

In addition, despite Green's arguments to the contrary, our decision in Flint has not been undermined or called into question by the Supreme Court's subsequent decisions in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708 (2002) and Sereboff v. Mid-Atlantic Medical Services, Inc., ___ U.S. ___, 126 S. Ct. 1869 (May 15, 2006). As is discussed in Section B, those Supreme Court decisions were limited to Section § 502(a)(3) of ERISA, and the types of "equitable relief" that are available under that separate section. The decisions in Knudson and Sereboff did not discuss § 502(a)(1)(B)–the provision whose contours we set out to define in Flint.

14

benefits is ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  That subsection provides

for a cause of action

> by a participant, beneficiary or fiduciary . . . to obtain other
> appropriate equitable relief (i) to redress [] violations [of
> ERISA] or (ii) to enforce any provisions of [ERISA] or the
> terms of the plan.

Id.  Thus, under the plain language of § 502(a)(3), the relief sought must be

equitable in nature, and the claim for relief must be predicated on either a violation

of ERISA or the enforcement of a plan provision or an ERISA provision.

Green contends that his cause of action for interest on his delayed benefits

constitutes "other appropriate equitable relief" and that therefore it is permissible

under ERISA § 502(a)(3).  He also argues that he has successfully established

violations of both ERISA and the Plan, such that his action should be permitted to

go forward.  The district court found that, even assuming that Green's action for

interest could be said to fall under the rubric "equitable relief," Green had not

identified a violation of either ERISA or the Plan.  Thus, the court properly

concluded that Green's claim failed as a matter of law, regardless of whether the

interest Green sought constituted "appropriate equitable relief."  § 502(a)(3).

Green now appeals that decision.

We first address Green's contention that his action for interest on his

delayed disability benefit is a claim for "other appropriate equitable relief" within

15

the meaning of § 502(a)(3). The Supreme Court defined the scope of relief that is available under § 502(a)(3) in Knudson and Sereboff. Knudson involved an action by an insurance company against an injured driver who was protected by an employee benefit plan. Knudson, 534 U.S. at 207-08, 122 S. Ct. at 711-712. After the injured driver recovered tort damages from a third party tortfeasor, the plan's insurer sued the plan participant, seeking reimbursement for monies that it had paid out to her for her medical expenses pursuant to the plan. Id. The insurer's action was brought under ERISA § 502(a)(3); the insurer argued that the plan participant's failure to reimburse it constituted a violation of the plan's terms, and that its claim was "equitable" in nature, in that it involved both an injunction and a claim for restitution. Id. at 210-12, 122 S. Ct. at 713-14.

The Supreme Court disagreed, and affirmed the grant of summary judgment in favor of the defendant, based on its conclusion that the insurer's action was not "equitable" in nature, as it was essentially a claim to compel the defendant to pay a sum of money–that is, a traditional suit at law for damages. Id. at 210, 122 S. Ct. at 712-713. The Knudson court also rejected the insurer's attempt to characterize the ERISA reimbursement action as one of equitable restitution. Id. at 212-13; 122 S. Ct. at 714. The Court drew a distinction between legal restitution–"a judgment imposing merely personal liability upon a defendant to pay a sum of money"–and equitable restitution–an action in which the plaintiff seeks to "restore to the

16

plaintiff particular funds or property in the defendant's possession" through the imposition of a constructive trust or an equitable lien. Id. at 213-14; 122 S. Ct. at 714-15 (quotations omitted). Knudson made clear that the latter type of action could be alleged under § 502(a)(3), as it was truly equitable, but that the former type of action could not. Applying that rule to the facts of Knudson, the court concluded that the plaintiff-insurer sought funds that were no longer in the defendant's possession, but had instead been placed into a special needs trust, id. at 207, 122 S. Ct. at 708, and that therefore its action was closer to a claim at law–at essence, seeking to "impos[e] merely personal liability upon a defendant to pay a sum of money"–such that it was not permissible under § 502(a)(3). Id. at 213-14; 122 S. Ct. at 714-15.

In Sereboff, the Supreme Court clarified the scope of Knudson by permitting a plaintiff to sue under § 502(a)(3) to enforce a reimbursement provision in a benefit plan on a theory of equitable restitution. Like Knudson, Sereboff involved a claim by a plan administrator to obtain reimbursement for medical expenses that had been paid out to the plan beneficiary by a third party tortfeasor. However, in Sereboff, the court emphasized that the funds had been specifically identified (via the third party recovery provision of the plan itself); that the funds were still in the defendant's possession; and that it was undisputed that the plaintiff was entitled to them under the plan's terms. ___U.S. at ___, 126 S. Ct. at 1874. The court thus

17

observed that the restitution action at issue involved "a constructive trust or equitable lien on a specifically identified fund," id., and that therefore it was distinguishable from the type of claim lodged in Knudson. Sereboff reiterated the rule that a suit to recover a specific, identifiable asset in the possession of a defendant would constitute a valid equitable restitution claim, and that therefore such a claim would be permissible under ERISA § 502(a)(3). Id.

Undoubtedly mindful of these two decisions construing § 502(a)(3), Green frames his present action for interest on his retroactive disability payment as being in the nature of "equitable restitution" and disgorgement of profits. R1-1 at 16. As such, he argues that his claim for accrued interest is in the nature of "other appropriate equitable relief." We need not decide that question, however,[6] because it is clear that Green has failed to present evidence of either an ERISA violation or a Plan violation on the part of the Trustees, which is a prerequisite to pursuing an action for equitable relief under the plain language of § 502(a)(3).[7]

---

[6] We leave for another day the question of whether a stand-alone claim for accrued interest–where benefits were withheld in violation of either a benefit plan or ERISA itself– would be cognizable in this circuit under § 502(a)(3) on a theory of equitable restitution.

[7] Green contends that requiring either an ERISA violation or a violation of the Plan in connection with a § 502(a)(3) claim works a "hyper-literal reading of § 502(a)(3)(B)." Appellant's Reply Br. at 4. See also id. at 2 (stating that "[w]e shouldn't have to . . . prove a violation of the Plan Document or ERISA under § 502(a)(3)"). The language of the statute is plain, however, and it clearly mandates a showing of an ERISA violation or a plan violation. Green cites no authority to the contrary.

In fact, the cases on which Green relies make clear that there must be either an ERISA violation or a plan violation in connection with a plaintiff's § 502(a)(3) claim for equitable relief. All of our sister circuits that have recognized a claim for interest under § 502(a)(3) on an

18

1. Breach of the Plan Terms

First, there is no evidence of any violation of the terms of the Plan on the part of the Trustees. Green alleges that the Trustees breached the Plan's terms because they failed to pay him disability benefits when he was eligible for them. He argues that he became "eligible" for the benefits at the moment he was totally disabled–that is, in 1993–and that, under the Plan's terms, he was entitled to monthly disability payments from that time forward. He contends that the failure to pay out benefits immediately after the month he became eligible constitutes a breach of the Plan, such that his § 502(a)(3) action is proper.

We disagree. As the Trustees have pointed out, under ERISA's own provisions they are prohibited from paying benefits to a claimant who has not demonstrated an entitlement to such benefits. That is, the Trustees' payment of benefits hinges on their subsequent *determination* that a benefits claimant is

equitable restitution theory have done so *only* in light of evidence that the plan administrator either violated the terms of the plan in question, or violated ERISA itself. See, e.g., Skretvedt, 372 F.3d at 215 (stating that if a plaintiff's benefits "were withheld or delayed in violation of ERISA or an ERISA plan," then an action for interest under § 502(a)(3) would lie) (citation and internal quotations omitted); Fotta v. Trustees of the United Mine Workers of Am., 319 F.3d 612, 617 (3d Cir. 2003) (same); Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1006-09 (8th Cir. 2004) (stating that a defendant's actions "in initially denying and later suspending [the plaintiffs]'s benefits constituted a breach of its obligations under the plan and its statutory duties under ERISA," and that therefore an action for interest under§ 502(a)(3) was viable); Dunnigan v. Met. Life Ins. Co., 277 F.3d 223, 230 (2d Cir. 2002) (permitting interest under § 502(a)(3) where the benefits were "unreasonably delayed and made long after [the claimant] was entitled to receive them" under the terms of the plan); Moore v. Capitalcare, Inc., 461 F.3d 1, 13 (D.C. Cir. 2006) (finding that the lower court acted improperly in denying a plaintiff's claim for interest, where the defendant failed to pay benefits to which the plaintiff was clearly entitled under his ERISA plan).

eligible, irrespective of Green's interpretation as to when he was actually eligible. Here, the Trustees diligently and in good faith undertook to determine Green's eligibility for disability benefits, and, upon determining that he was eligible, paid benefits retroactively to January 1994, as required by the Plan. Green's allegation of a Plan violation is unavailing.

Indeed, according to the Plan's express terms, only an employee who is "totally disabled as a result of a mine accident" is "eligible for a pension," and such employee will "be considered to be totally disabled *only if* by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance [SSDI] Benefits . . . ." R1-33, Exh. A at 7 (emphasis added). Moreover, after this preliminary threshold is met, the claimant must also establish causation–that is, that the mine accident proximately caused, or was substantially responsible for, the resulting disability. See, e.g., McCoy, 364 F.3d at 170. The Plan's own terms make clear that a person is not "eligible" for disability benefits unless they are totally disabled, and, moreover, that a person is not totally disabled under the Plan unless and until they have been determined to be eligible for SSDI benefits and have established the requisite causal connection between the accident and the disability. The Plan further states, in pertinent part, that a claimant is entitled to a monthly payment in "the month following the month in which the Participant . . . becomes eligible for a pension in accordance with [the

20

Eligibility provisions of the Plan] . . . ."  R1-33, Exh. A at 15.

In light of the Plan's language, Green's award of SSDI benefits in 1998 (eight years after his accident) would have been the instigating factor in assessing whether he was "totally disabled" and thus eligible for a pension under the Plan. That would not have ended the inquiry, however, for, under the Plan's own terms, the Trustees would also have had to assess the issue of causation–that is, whether Green was totally disabled "as a result of a mine accident," see id. at 7–a process which, based on the evidence, they undertook carefully and thoroughly.  When the Trustees paid out benefits, they paid them retroactively to January 1994, which was "the month following the month" in which Green had first become eligible (*i.e.* December 1993).  See id. at 15.  We find that the Trustees acted in accordance with the terms of the Plan in assessing Green's disability claim.  Because there is no evidence that they violated the Plan,[8] Green cannot justify his claim for equitable relief under ERISA § 502(a)(3) on this basis.

2.  Alleged Breach of ERISA

---

[8] Green contends that *any* delay–however minor–in paying out disability benefits effectuates an unjust enrichment (in that the Plan participant loses the time value of money); violates the duties imposed on Plan administrators pursuant to ERISA; and thereby creates a cause of action under § 502(a)(3).  The problem with this contention, of course, is that every claim for disability benefits under an employee benefit plan will inevitably involve some amount of administrative delay in processing the claimant's request.  We are loath to accept Green's blanket contention that every delay in paying out disability benefits, however short, works an unjust enrichment against the Plan participant, effectuates a violation of ERISA, and thereby automatically creates a cause of action for accrued interest on the benefits under § 502(a)(3).

Nor has Green presented any evidence that the Trustees breached ERISA in delaying his disability benefit, in processing his benefit, or in paying his claim without accrued interest. Green argues that the payment of his disability award without any interest constituted a decrease or a forfeiture of an "accrued benefit" via a Plan amendment, in violation of ERISA § 204(g), 29 U.S.C. § 1054(g). That provision, known as the "anti-cutback" rule, is "intended to prevent employers from pulling the rug out from under employees participating in a plan," Williams v. Cordis Corp., 30 F.3d 1429, 1431 (11th Cir. 1992) (per curiam) (internal quotations omitted), by preventing employers from eliminating benefits via a Plan amendment. Aldridge v. Lily-Tulip, Inc. Salary Ret. Benefits Committee, 953 F.2d 587, 590 (11th Cir. 1992). As the Trustees properly point out, however, § 1054(g) does not apply to employee welfare benefit plans such as Green's. See Rombach v. Nestle USA, Inc., 211 F.3d 190, 192-94 (2d Cir. 2000). Thus Green's attempt to allege a violation of on the part of the Trustees based on § 1054(g) is unavailing.

Put simply, we find no evidence of either a Plan violation or an ERISA violation so as to warrant a § 502(a)(3) claim for equitable relief. Because the Trustees acted reasonably and in accordance with both the Plan and ERISA in processing Green's disability claim, the district court properly concluded that Green's § 502(a)(3) action for accrued interest failed as a matter of law. And because, on these facts, neither § 502(a)(1) nor § 502(a)(3) support Green's stand-

22

alone action for accrued interest against the Trustees, the district court acted properly in granting summary judgment to the Trustees on all of Green's claims.[9]

## III. CONCLUSION

Green has appealed the district court's grant of summary judgment in favor of the Trustees on all of his claims, finding that ERISA § 502 did not entitle him to bring his stand-alone action for accrued interest on delayed disability benefits, absent evidence of a Plan violation or an ERISA violation on the part of the Trustees. Having reviewed the record and the arguments of the parties, we conclude: (1) that Green's independent, stand-alone action under ERISA § 502(a)(1)(B) for accrued interest on his delayed disability benefits is clearly precluded by our holding in <u>Flint</u>; and (2) that Green failed to provide evidence of either a Plan violation or an ERISA violation in connection with his ERISA § 502(a)(3) action for equitable restitution, and, that, therefore, his § 502(a)(3) claim fails as a matter of law. Accordingly, the district court acted properly in granting summary judgment to the Trustees on all of Green's claims, and its judgment is **AFFIRMED**.

---

[9] Because we have found that summary judgment was properly granted in favor of the Trustees on the underlying ERISA claims of Green, the class representative, the question of class certification is moot. <u>See, e.g.</u>, <u>Telfair v. First Union Mortgage Corp.</u>, 216 F.3d 1333, 1343 (11th Cir. 2000) ("With no meritorious claims, certification of those claims as a class action is moot.").